# CHARLESTON.

## GROSS *v*. GROSS.

Submitted January 31, 1911. Decided February 6, 1912.

1. APPEAL AND ERROR—*Record—Certificate of Evidence.*

A vacation order of a judge certifies the presentation to him of bills of exception and a transcript of all the evidence, and certifies that for identification the bills were numbered as bills of exception by a number to each, and that the certificate of evidence was marked "Certificate of Evidence," and certifies that the bills were signed, and that the certificate of evidence was also signed by the judge, and the order says that bills and certificates were ordered to be made a part of the record. The bills refer to the "Certificate of Evidence" as part of them. The "Certificate of Evidence" is part of the record, and brings the evidence before this Court. (p. 318).

2. HUSBAND AND WIFE—*Action by Wife—Alienation of Husband's Affections.*

A wife, though the husband be living, has right of action in her sole name for wrongful alienation of her husband's affection causing his separation from her. (p. 319).

3. SAME—*Alienation of Husband's Affections—Liability of Father.*

A father is liable to his son's wife for alienating the affection of the son from his wife, and causing him to separate from her, if the father is moved by malice towards the wife and without good faith and honest purpose and good motive for the welfare of his son. If his action is without malice and springs only from what he honestly believes to be necessary for the welfare of his son, he is not liable, and the presumption is that he acts without malice and with such good motive until the contrary appears, and the burden is on the wife to show malice and absence of such good motive. (p. 322).

Error to Circuit Court, Randolph County.

Action by Frances Dent Gross against Cecil Gross. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*W. B. Maxwell, D. H. Hill Arnold* and *W. E. R. Byrne,* for plaintiff in error.

*Fred O. Blue, Arthur D. Dayton,* and *W. E. Baker,* for defendant in error.

BRANNON, PRESIDENT:

Francis Dent Gross brought an action of trespass on the case in the circuit court of Randolph county against her father-in-law, Cecil Gross, charging him with having alienated the affection of her husband, Ivan Victor Gross, and inducing him to separate from her, and she recovered a verdict and judgment for twelve thousand, five hundred dollars, and Cecil Gross comes to this Court for relief.

It is contended that no bill of exceptions brings the evidence before us so that we can review the case. The order of the judge says that the defendant presented fifteen bills of exception and also a transcript of all the evidence, and for their identification numbers the bills and states that the transcript is marked "Certificate of Evidence," and orders that bills and said

"Certificate of Evidence" be made part of the record. This Certificate of Evidence, so marked, is found in the record and bills of exception, about which as parts of the record no question can be made, refer to it as "Certificate of Evidence." Thus, this evidence has a distinct ear mark of identification in the order of the judge and in bills of exception so that there can be no difficulty in finding it. The point is technical and unsubstantial, too much so to shut a suitor out of court. *State* v. *Legg,* 59 W. Va. 315; *Hughes* v. *Frum,* 41 W. Va. 445; *Kay* v. *Railroad,* 47 W. Va. 467.

Does the declaration show good cause of action? As one ground of demurrer it is said that the declaration showing the plaintiff to be a married woman, she can not sue in her own name. Here we meet with a question somewhat difficult, more so than at first it appeared to me. The authorities differ somewhat. By the common law the suit for a tort to the wife could not be sued by her alone by preponderance of authority. This was on account of unity of husband and wife placing her under disability; but we have a statute saying that "A married woman may sue or be sued in any court of law or chancery." Is such a demand as this arising from tort, a mere claim for unliquidated damages, a *property* right, so as to be considered a separate estate of the wife? If so there is no difficulty in saying that she may sue to enforce it under that statute giving her full capacity to sue. I think, with some hesitation, that it is a property right as held in *Jaynes* v. *Jaynes,* 39 Hun. 40.

It has been held otherwise. 28 Am. R. 532. It is true that it does not seem comprehended by secs. 1, 2 & 3 of ch. 66 of Code 1906. It is not property acquired "by inheritance or by gift, grant, devise or bequest." It is a right to demand money. It must be in favor of some one. This tort was to the wife's injury. She is the meritorious cause of action. By the common law action for tort injurious to the wife must be by husband and wife. The right was in the wife, but owing to disability she could not sue alone. First Minor's Inst. 387. It is suggested that section 13 of chapter 66 specifies three cases where the married woman may be sued alone, one being where the action concerns her separate property, and it is said that this section 13 limits the right of action under 15, and must be read

with it; but those two sections have different functions; one giving the right of action to the wife to sue in her own name, the other gives right to sue the wife without joining her husband. Two different purposes. I do not see how sec. 13 has any thing to do with a suit by the wife, since it touches only suits against a married woman and does not give action in her favor. We think that sec. 15 should be given a liberal construction to enable a married woman to sue, and that section three should be liberally construed to make such a demand separate property.

The old rules of the common law laid down centuries gone, making the wife the inferior, practically a slave, have become wholly distasteful to enlightened public sentiment, and from statute and refusal of many courts to follow them, have "gone glimmering through the dream of things that were, the school boy's tale, the wonder of an hour." The rule saying that for a tort against the wife she could not sue during wedlock, but could do so after its close, arose from the old rule stated by Blackstone thus: "The inferior hath no kind of property in the company, care or assistance of the superior, as the superior is held to have in those of the inferior, and therefore the inferior can suffer no loss or injury." 3 Bl. 142. The old rule made the two persons a unit, and sunk the individuality of the woman in the individuality of the man. Her property rights were sunk largely. Therefore, she could not alone sue to enforce her right. But in our day, when we look at not merely the letter, but the purpose, of acts giving the wife separate estate, and right to sue, and modern decisions, we conclude that old rules have perished, that a wife is not the legal inferior, but the equal of the husband. Reflect that in sustaining the wife's capacity to sue we only say that her incapacity to sue for a tort affecting her was only a disability to sue during wedlock, and that is removed by a broad statute giving her absolute right to sue. We do not go far. We do not legislate. The Legislature has plainly legislated this result, by fair construction of the letter and spirit of its acts. There are older cases denying the right of married women to sue for alienation of the affection of her husband. *Duffies* v. *Duffies,* 20 Am. St. R. 29, and Doe, 17 Am. St. R. 499. But in later days since the separate estate acts protecting the property of the wife many,

many cases assert this right of action in the wife. Cooly on Torts 475 says that twenty states concede this right of action to the wife in her own name. For the proposition that such action lies I cite Tiffany on Domestic Relation 78; note in 94 Am. Dec. 593; note 20 Am. St. R. 88; *Williams* v. *Williams,* 20 Colo. 57; 15 Amer. & Eng. Ency. L. 864; *Westlake* v. *Westlake,* 32 Am. Rep. 307; *Jaynes* v. *Jaynes,* 39 Hun. 40; *Gernerd* v. *Gernerd,* 40 L. R. A. 549, 64 Am. St. R. 646 and note. I refer particularly to the well considered case of *Bennett* v. *Bennett,* 6 L. R. A. 553. It holds that whilst before the late statute of New York providing that "in an action or special proceeding a married woman appears, prosecutes or defends, alone or joined with other parties, as if she were single," the action had to be in the name of the husband and wife, yet that statute would entitle the wife to an action in her own name for the alienation of the affection of her husband. Our statute is to the same effect as the New York statute. As said above, if this demand is separate property, there can be no question that the wife can sue alone; but even if we can not regard it as separate property, then I would say that section 15 giving her right to sue, even if this demand be not property, it is an actionable right springing from a wrong to her, and she has a right to sue; that section alone vests in her power to sue, and thus abolishes former laws disabling her to sue alone because of the unity of husband and wife. This was so held in *Beach* v. *Brown,* 72 Am. St. R. 98, and *Seaver* v. *Adams,* 49 Am. St. R. 597, and cases in note.

Some cases hold that without an enabling statute the wife may sue alone. *Foot* v. *Card,* 18 Am. St. R. 258; *Williams* v. *Williams,* 20 Colo. 51. There is reason why we should not expect the husband to unite in a suit against his father. And generally why should not a wife sue alone for such a wrong? Should the old unjust rule of the common law still prevail, allowing a husband to sue and pocket the proceeds? It is undoubted that a husband may sue for the seduction of his wife, and there is no reason why the wife should not have equal right to sue for seduction of her husband. The ground of action is the loss of consortion.

A second ground presented to sustain the demurrer is, that the declaration should state that Cecil Gross is father of Ivan

Gross, and allege that the defendant's act was not actuated by parental solicitude for the welfare of the son, and that it is not enough to charge malice, as in the case of a stranger, but the declaration must also negative good motive on the part of the father. We do not see that these points are tenable. It is enough to charge malice. This contention is rested on the law universally stated, that a parent is not liable for causing his child to separate from husband or wife, if the counsel given the child is such as he fairly and honestly considered to be called for by the life or health or welfare of his child. This is a favor shown to a parent, the law realizing the impulse of a father for an unfortunate child. To justify recovery the plaintiff carries the burden of showing malice and of overcoming the presumption that he acted under the influence of natural affection, and for what he believed to, be for the real good of the child. He may lawfully do so, if he honestly believes that the continuance of the marriage relation will injure health or mind or destroy peace of mind, even though it turn out that he acted on mistaken premises or false information, and that the result of his intervention has been unfortunate. The rule is more liberal to the parent than to a stranger. *Multer* v. *Knibbs,* 193 Mass. 556, 9 L. R. A., N. S. 322. "In every suit of this kind the prime inquiry is, from what motive did the father act? Was it malicious, or was it inspired by proper parental regard for the welfare and happiness of the child?" *Tucker* v. *Tucker,* 32 L. R. A. 623. The act must be shown to be malicious, "as all legal presumptions, in such cases, are that the parent will act only for the best interests of the child."

*Reed* v. *Reed,* 51 Am. St. R. 210; *Brown* v. *Brown,* 70 Am. St. R. 574. In an early leading case on this subject, *Hutchinson* v. *Peck,* 5 Johns. 196, the great Chancellor Kent said: "If the defendant did not stand in the relation of father to the plaintiff's wife, I should not, perhaps, be inclined to interfere with the verdict. But the relationship gives rise to a new and peculiar interest. * * * * * * A fathers house is always open to his children, and whether they be married or unmarried, it is still to them a refuge from want, and a consolation in distress. Natural affection establishes and consecrates this asylum, and, according to Lord Coke, it is nature's provision to assist,

maintain and console the child. I should require, therefore, more proof to sustain the action against a father than against a stranger. It ought to appear, either that he detains the wife against her will, or that he entices her away from her husband from improper motives. Bad or unworthy motives cannot be presumed. They ought to be positively shown, or necessarily deduced from the facts and circumstances detailed. * * * * The *quo animo* ought, then, in this case to have been made the test of inquiry and the rule of decision." Whilst such is the law, I think it sufficient to charge, as the declaration in this case does, that the defendant "contriving wilfully, knowingly, wrongfully, unjustly and maliciously intending to injure, prejudice and aggrieve the plaintiff" in her enjoyment of the companionship, aid, society, comfort, protection and happiness derived from her husband, did the acts.

There are a great many bills of exceptions and assignments of error. We have considerately gone over them. We have not found reversible error in evidence admitted or rejected. It is useless to detail it. Nor have we found error in instructions. As we have sought in this opinion to state the law applicable in such a case, we shall not incorporate the mass of instructions, as they do but reflect the law above stated. We think the court fairly and clearly presented the law suited to the case, leaving it to the jury to pass on the evidence. The court refused a permptory instruction to the jury to find for the defendant, and overruled a motion for a new trial, and overruled a motion to render judgment for defendant *non obstante verdicto*.

Thus, we are called upon to say whether the verdict is warranted by the evidence. Here we state that this depends on a large volume of oral evidence, consisting of the conduct and action of the parties, letters, conversation, a great array of circumstances, and conflicting oral evidence. A verdict in such circumstance is well nigh conclusive. A verdict on evidence, not violating law, approved by a judge, is virtually above the touch of an appellate tribunal. On this principle, spoken by so many precedents, this court acts in the present case. The jury found the action of the father malicious and without good motive. We are asked also to set aside the verdict for excessive damages. Here again we are confronted with that verdict.

The law gives a jury in the matter of amount of damages in tort cases, where the damages are indeterminate, measured by no fixed measure or rule, almost unlimited discretion. Unless we can clearly find that bias, prejudice, passion or corruption animated the jury, its estimate must stand. It is hard to fix such an imputation. So, in favor of the plaintiff stands that bulwark, the verdict, sometimes the bulwark of justice, sometimes of error and oppression. Speaking only for myself, I doubt whether the jury accorded to the defendant the favor allowed him by law as a parent in the distressing circumstances surrounding him. His son had been in a hospital from a three month period of typhoid fever. He came from it weak in body, weak in mind, suffering from post typhoid insanity. He suffered from acute Bright's disease, and from orchitis, an ailment of the testicle. He had been nursed while in the hospital by the plaintiff, a young girl. A few days after leaving the hospital they were married, without knowledge of Ivan's family. Continuing ailing, he went for a few weeks rest to visit a brother in Indiana. When he returned, resumed work clerking at his father's lumber plant, but unable to do the work, leaving his wife at his father's home in Randolph County, he went to Pennsylvania to visit sisters of a former wife, who kept his three children by that wife, and while there was visited by his father, and while there he wrote his wife that the marriage was void, that she had taken advantage of him while weak in body and mind and allured him into marriage, and notified her of cessation of marriage relations. The father was in far off Oregon, when this letter was written. No doubt the jury had right to say that the father assented to this absence, or advised it.

He knew of the son's condition. Two physicians, the hospital physician and one in Pennsylvania, as well as other persons, had told the father that continuance of married relations would either retard the son's recovery or permanently ruin body and mind. I doubt whether the jury gave Gross the right of a father. I doubt whether the proof does overcome the presumption of law that a parent acts under such conditions honestly, with good faith, moved by parental love. I doubt whether the evidence comes up to the standard fixed by law, "the measure of proof must be exceedingly high." *Beisel* v. *Gulach,* 22 Pa. St.

232, L. R. A. 516. Speaking again for myself, it seems to me that the damages found are heavy, almost confiscatory. If the defendant had murderously slain the plaintiff, her father could not have recovered beyond $10,000. Under the circumstances, and there are those mitigating, I would say that the verdict is heavy. If on the jury I would not have found it; but there it is.

We are led to affirm the judgment.

*Affirmed.*