MRS. C. R. TOWNSEND v. J. C. HOLDERBY et al.

(Filed 16 October, 1929.)

1. **Husband and Wife F a—Wife may bring action for alienation of affections of husband without his joinder.**

An action brought by the wife against her husband's step-father and brother for alienating his affection from her and causing his continuous separation is in tort and does not require the joinder of her husband therein, and is not a defect of parties.

2. **Husband and Wife E b—Burden of proof of alienation of affections of husband is on wife in her action therefor.**

In an action by a wife against the step-father and brother of her husband for alienating her husband's affections, and causing him to continue to live apart from her, the burden is upon her to prove these matters when alleged by her and denied by the defendants.

3. **Same—Evidence that defendants alienated the affections of plaintiff's husband held insufficient in this case.**

Where in an action by a wife against the step-father and brother of her husband for the alienation of her husband's affections, the evidence introduced by the wife fails to show any malice or ill-will of the defendants toward her or that the defendants did anything to alienate the affections of the husband or cause him to separate himself from her and continue to live apart from her, but tends to show that his separation was caused by a groundless delusion due to his mental condition, with further evidence that the husband lived with the defendants after the separation, is insufficient to be submitted to the jury, and a nonsuit should be granted, the law not imputing any purpose to injure the plaintiff from the fact that the defendants allowed the husband to live with them after the separation.

APPEAL by defendants from *Lyon, Emergency Judge,* at April-May Special Term, 1929, of PITT. Reversed.

Action to recover damages caused by the wrongful and malicious alienation of the affections of plaintiff's husband, resulting in his abandonment of her.

It is admitted that plaintiff and her husband are now living separate and apart from each other, and that they have so lived since 1924; defendants deny, however, that they or either of them caused such separation, or that they have prevented the return of plaintiff's husband to her.

It is admitted that when plaintiff's husband left his home in July, 1924, he had a delusion, which was wholly without justification in fact, with respect to plaintiff's fidelity to him, and that said delusion was due to the unfortunate mental condition of said husband. The evidence tended to show that said delusion has persisted, notwithstanding the assurances of friends and relatives that it was groundless.

Plaintiff and her husband were married in 1915. They lived together happily until the summer of 1924. During this time three children were born. Plaintiff's husband was successful in business, and all the evidence was to the effect that he maintained a comfortable home for his wife and children, being at all times an affectionate husband and a devoted father. In the summer of 1924 he suffered a breakdown in his health, both physical and mental. Upon the advice of plaintiff and her relatives, he left his home in this State on 2 July, 1924, and went to Richmond, Va., where he entered a sanatorium for treatment. There was no evidence tending to show that defendants or either of them advised with or counselled plaintiff's husband with respect to his health or with respect to his leaving his home. Plaintiff testified that she urged her husband, after consultation with her father, to go to the sanatorium for treatment. She also testified that "the first estrangement that arose between me and my husband was for some reason other than conduct on the part of the Holderbys. I think the cause of the first estrangement between myself and my husband was due to financial reasons, or business transactions, in which neither of the Holderbys had anything whatever to do, that I know of. He never alluded to my being untrue to him until just before he went to the hospital. He accused me of infidelity after the birth of my baby." She further testified, "I think all of the unfortunate occurrences related by me were due to the mental condition of my husband."

While plaintiff's husband was in the sanatorium at Richmond, he communicated with defendants, J. C. Holderby, his step-father, and Murrill Holderby, his brother. At his request, one or both of them went to Richmond to see him. He returned to this State with them, and entered a hospital at Wilson, where the defendants then resided. He remained in this hospital for several weeks; while he was there defendants visited him frequently. When he left the hospital, he went to the home of defendants, Murrill Holderby and his wife, Lillie Holderby. He remained in their home for some time and then went to a hospital at Battle Creek, Michigan. Since leaving that hospital, he has traveled widely throughout the United States, sometimes on business and sometimes visiting relatives. He now lives at Valdosta, Georgia, where he makes his home with defendants, Murrill Holderby and Lillie Holderby. The defendant, J. C. Holderby, now lives at Mullins, S. C. Plaintiff's husband has not lived with her since July, 1924. Plaintiff testified, "I think the beginning of the estrangement between my husband and myself was due to his mental condition. I think the defendants are the cause of his staying away. I do not think they caused his mental condition, but they are the cause of his not keeping well." There was no evidence tending to show any conduct on the part of the defend-

ants, or of either of them, which supports plaintiff's opinion that defendants have prevented the return of her husband to her, unless it be evidence to the effect that they have associated with him and permitted him to live in their home.

After plaintiff's husband left her in the summer of 1924 and after she had been informed that he justified his conduct toward her by charging that she had been unfaithful to him, she caused a warrant to be issued for his arrest on the charge that he had slandered her. He has not been arrested on this warrant. Upon learning of the issuance of the warrant, he left the State and has since remained out of the State for the purpose of avoiding arrest. Plaintiff thereafter instituted a proceeding under the laws of this State, for an allowance to be made out of her husband's estate for her support. In this proceeding an order was made for such allowance and said order has been complied with. Plaintiff has received from her husband's estate money and property for the support of herself and children, in accordance with said order.

The issues submitted to the jury were answered in favor of the plaintiff and against the defendants.

From judgment on the verdict, that plaintiff recover of the defendants both compensatory and punitive damages as assessed by the jury, defendants appealed to the Supreme Court.

*Walter G. Sheppard and J. Paul Frizzell for plaintiff.*
*L. W. Gaylord and Harding & Lee for defendants.*

CONNOR, J. Whatever may be the law in other jurisdictions, it is settled in this State by authoritative decisions of this Court, that a married woman, who has been abandoned by her husband, can maintain an action in her own name for a tort. *Brown v. Brown,* 121 N. C., 8, 27 S. E., 998. In that case it was held that a complaint in which the plaintiff alleged that the defendant had alienated the affections of her husband, and induced him to abandon her and to refuse to contribute anything to her support, was not demurrable on the ground that it appeared on the face of the complaint that there was a defect of parties for that plaintiff's husband had not been joined with her as a party plaintiff. Upon an appeal from the judgment on the verdict in that case, 124 N. C., 19, 32 S. E., 320, it was held that "before a parent can be held liable in damages for advising his married child to abandon his wife or her husband, the conduct of the parent should be alleged and proved to be malicious; that the wilful advice and action of the parent in such a case may not be necessarily malicious, for the parent may be determined and persistent and obstinate in his purpose to cause the separation and yet be entirely free from malice—in fact, have in view the highest good of his child." This principle is applicable not only when

the defendant in an action for alienation of affection is the parent of the plaintiff's husband or wife, as the case may be, but also where the defendant is a near relative of plaintiff's husband or wife. *Powell v. Benthall,* 136 N. C., 145, 48 S. E., 598. In that case, it was held that the principle is applicable where defendants are the brother-in-law, and sister of plaintiff's wife. See 30 C. J., p. 1131, and cases cited in support of the text, which is as follows:

"The rule permitting parents to advise their children in good faith applies when the special circumstances require it, in favor of other near relatives of plaintiff's spouse, and in favor of such spouse's guardian, but a defendant cannot claim any such protection where the evidence fails to disclose the necessary special circumstances."

In the instant case, defendants do not admit that they have caused plaintiff's husband to separate himself from her, nor do they admit that they have caused him to live separate and apart from her, and upon such admissions rely upon the contention that their conduct was not wrongful and malicious. They deny the allegations in the complaint that they caused the separation, or that they have caused its continuance. The burden was therefore on the plaintiff to prove the truth of her allegation with respect to these matters. *Gross v. Gross,* 70 W. Va., 317, 73 S. E., 961, 39 L. R. A. (N. S.), 261.

A careful examination of all the evidence set out in the case on appeal fails to disclose any evidence tending to show conduct on the part of defendants, or of either of them, which was designed to, or which in fact did cause plaintiff's husband to separate himself from her, or to continue to live separate and apart from her. The fact that he has lived with defendants, making his home from time to time with them, taken in connection with his admitted relationship to them, is not sufficient to show that defendants have alienated his affection from the plaintiff, or that they have caused him to continue to live separate and apart from her. The conduct of defendants with respect to plaintiff's husband is altogether consistent with a purpose on their part to aid him; the law will not impute a purpose to injure plaintiff, as she alleges. There was no evidence tending to show that either of the defendants have done any wrong to the plaintiff, or that either of them have any ill will or malice toward her. Plaintiff's unfortunate situation was not caused by the defendants. All the evidence tends to show that it is caused by the groundless delusion of her husband, due to his unfortunate mental condition.

There was error in the refusal of the court to allow defendants' motion for judgment as of nonsuit, at the close of the evidence. The action should be dismissed. To that end the judgment is

Reversed.