ALEXANDRA B. HANKINS v. J. R. HANKINS AND WIFE, MINDA HANKINS.

(Filed 9 March, 1932.)

**1. Husband and Wife E a—Elements necessary to be established in action for alienation of affections.**

In an action by a wife to recover damages for the alienation of the affections of her husband she must establish by proper evidence that she and her husband were happily married and that genuine love and affection existed between them, that such love and affection was alienated, and that the wrongful and malicious acts of the defendant brought about such alienation.

**2. Husband and Wife E b—Evidence in this case held incompetent in an action for damages for alienation of affections of husband.**

Where, in an action by a wife against her father-in-law to recover damages for the alienation of the husband's affections, the evidence tends to show that the married couple came to live with the husband's father on account of their strained financial circumstances: *Held,* evidence that the defendant's house was in disrepair and that the food,

which was served to all alike, was not good, that the defendant opposed the church and held views of contempt for the marriage ceremony is incompetent, and the judgment of the Superior Court granting a new trial in the county court upon exceptions based upon the admission of such evidence will be affirmed.

**3. Evidence I b—Admission of letter in evidence in this case held error.**

In an action by the wife against her father-in-law for alienating from her the affections of her husband: *Held*, a letter from the plaintiff's attorney to the defendant listing the wrongs alleged to have been committed by him is *ex parte* and self-serving and incompetent as evidence upon the trial.

**4. Husband and Wife E b—In action for alienation evidence of the relations between the parties is competent within limits.**

In an action by the wife against her father-in-law to recover damages for the alleged alienation of the affections of the husband evidence of the relationship between the parties is competent and constitutes a proper and vital subject of inquiry, but evidence of the number of parties the plaintiff had in her own house, or of the amount of money the defendant gave his daughters, or of the provision of the defendant to have his body cremated is incompetent and does not come under the rule, such evidence being wholly foreign to the issue and not being of declaration tending to show bias, animus or hostility to the plaintiff or her marriage.

CIVIL ACTION, before *Oglesby, J.,* at September Term, 1931, of FORSYTH.

This action was instituted in the County Court of Forsyth County. The plaintiff married James Hankins, the son of the defendant, in New York, in September, 1923, and afterwards lived in Boston, Massachusetts, for about two years.

The evidence tended to show that James Hankins was supposed to be studying law at Harvard University, but that he fell in love with plaintiff and the marriage resulted. The young couple had a hard time. The husband worked for a doctor in Boston and at the Waldorf Cafeteria. His duties were chiefly those of a janitor at the home and at the office of the doctor. The plaintiff also was working in somewhat the capacity of a servant. In due time a baby was born and the family was becoming involved in debt. In October, 1925, the plaintiff and her husband and baby came to Winston-Salem, North Carolina, to live in the home of defendants. The defendant, J. R. Hankins, father of plaintiff's husband, secured employment for his son at Reynolds Tobacco Company.

The plaintiff testified that when she arrived at the home of her father-in-law and mother-in-law, the defendants in this case, that she received a cold reception. The plaintiff and her husband were assigned a room in the home of defendants on the second story. The plaintiff

offered evidence tending to show that she was pregnant with the second baby at the time she came to the home of her father-in-law.

The evidence in the case covers approximately three hundred printed pages and no effort will be made to recapitulate it in detail. The testimony of plaintiff tended to show that the defendant, her father-in-law, was close-fisted, stingy and parsimonious; that he conceived the idea that plaintiff was extravagant, and that he began to complain about water dripping from the faucets and other petty details. Plaintiff further testified that the antipathy of her father-in-law increased from time to time, and that he called her a "dirty pig" and accused her of being a thief because she wasted water from the faucets in the house; that he called her an "old fool" because she disagreed with some of his religious views, and that upon one occasion when she and her husband were having an argument the defendant, her father-in-law, suggested to his son that he pick up a stick of wood and "knock her on the head"; that the said defendant had inquired of his son if there was no way to upset the marriage, and that he advised his son to throw the plaintiff out of his life. Subsequently plaintiff's husband and her brother-in-law assaulted the defendant and beat him because the father refused to hand over to his sons certain sums of money which they wanted, and that thereafter the father-in-law accused the plaintiff of encouraging the sons to beat the father. Plaintiff further testified that by reason of the hostility of defendants the affection of her husband was.thoroughly destroyed and alienated; that he became cross and quarrelsome and finally told his wife, the plaintiff, that she would have to "get to hell away from there."

About the latter part .of February or the first of March, 1930, plaintiff left and returned to Boston. The family then consisted of the plaintiff and four babies.

The defendants offered evidence tending to show that the plaintiff was extravagant and totally unwilling to make any reasonable effort to live within the income and earning of her husband, and that she was fiery and high tempered and disposed to "start an argument" with or without cause. There was evidence that the defendant, J. R. Hankins, started with nothing and through years of hard work and self-denial had accumulated a considerable block of Reynolds tobacco stock.

At the conclusion of the evidence a nonsuit was taken as to the mother-in-law, the defendant, Minda Hankins, and the following issues were submitted to the jury:

1. "Did the defendant, J. R. Hankins, maliciously alienate the affections of the plaintiff's husband and cause him to abandon his wife, the plaintiff, as alleged in the complaint?"

2. "If so, did the defendant, J. R. Hankins, act from personal ill-will towards the plaintiff, or wantonly or oppressively, or from reckless indifference to her rights?"

3. "What amount, if any, of compensatory damages is the plaintiff entitled to recover of the defendant, J. R. Hankins?"

4. "What amount, if any, of punitive damages is the plaintiff entitled to recover of the defendant, J. R. Hankins?"

The jury answered the first issue "yes," the second issue "yes," the third issue "$26,000," and the fourth issue "$12,000."

From judgment upon the verdict, the defendant appealed to the Superior Court and duly filed exceptions in accordance with the statute regulating the practice in Forsyth County Court. The cause was heard by Oglesby, judge, who sustained approximately nineteen exceptions assigned by the defendant and overruled about two hundred others, and awarded a new trial. The plaintiff appealed from judgment awarding a new trial, and the defendants appealed from that part of the judgment overruling the two hundred exceptions referred to.

*Parrish & Deal for plaintiff.*
*Manly, Hendren & Womble for defendant.*

BROGDEN, J. When the plaintiff instituted her action against the defendants for damages, both compensatory and vindictive, alleging that the affections of her husband had been alienated, the law imposed upon her the duty of showing, by proper evidence, the following facts: (1) that she and her husband were happily married, and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; (3) that the wrongful and malicious acts of defendant produced and brought about the loss and alienation of such love and affection. *Brown v. Brown,* 124 N. C., 19, 32 S. E., 320; *Powell v. Benthall,* 136 N. C., 145, 48 S. E., 598; *Cottle v. Johnson,* 179 N. C., 426, 102 S. E., 769; *Rose v. Dean,* 192 N. C., 556, 135 S. E., 348; *Hyatt v. McCoy,* 194 N. C., 760, 140 S. E., 807; *Townsend v. Holderby,* 197 N. C., 550, 149 S. E., 855.

Obviously, if the love and affection of the husband was alienated or destroyed either by his own cupidity, habits, or other cause, without interference or wrongful procurement of a third party, then such third party would not be liable in damages. The plaintiff, however, assumed the burden of proving that the loss of her husband's affection was occasioned and brought about by the wrongful and malicious counsel, advice and procurement of her father-in-law, the defendant, J. R. Hankins. She undertook to show that the house in which she was living

with her father-in-law was in bad repair and that the food was neither dainty nor nourishing, consisting principally of half-cooked cowpeas and collards; that her father-in-law was opposed to the church and that he was a disciple of one Haldeman Julius, who, apparently, was engaged in writing articles attacking and ridiculing the church, and particularly showing contempt for the marriage ceremony sanctioned by the church. She introduced a letter from her counsel to the defendants detailing her statement of the deficiencies and delinquencies of the defendant, her father-in-law.

In substance the foregoing evidence was found by the trial judge to be incompetent, and he sustained exceptions thereto and awarded a new trial. This Court concurs in the ruling of the trial judge with respect to such exceptions.

The plaintiff and her husband voluntarily entered the home of her father-in-law, the defendant, J. R. Hankins. At the time, plaintiff and her husband were hardly able to keep "buckle and tongue" together. If they were willing to accept the hospitality of the father-in-law, the law imposed upon them the duty of taking the home as they found it. If the food was not to the plaintiff's liking, it is sufficient to note that all other members of the family ate the same food. If the room in which plaintiff and her husband lived needed plastering, it was the defendant's home, and the plaintiff and her husband were not compelled to continue to reside therein. The evidence discloses that after some period of time the defendants conveyed a part of their homeplace to the plaintiff and her husband, and that thereupon they built their own dwelling and moved into it. In like manner, the evidence with respect to the defendant's hostility toward the church or his general religious views in the light of the record, was wholly incompetent. The liberality of our Constitution and laws not only recognizes but guarantees to each man the right to construct a religious belief to suit himself, free from the supervision and control of any power on earth. Moreover, the same liberality and security of law stand guard about him even if he has no religion at all. These principles are too fundamental to require debate or elaboration. S. v. Beal, 199 N. C., 278, 154 S. E., 604. Furthermore, the letter which plaintiff's attorneys wrote to the defendant, listing the wrongs committed by him was, at least, an ex parte and self-serving declaration.

The defendant presents to the court approximately two hundred exceptions based upon alleged incompetent evidence and erroneous instructions to the jury. Much of this evidence was admitted for the limited purpose of showing the relationship between the parties. It is useless to discuss the evidence bearing upon the relationship of defendant, Minda Hankins, for the reason that a nonsuit was taken as to her. Manifestly,

the relationship between the parties constitutes a proper and vital sub-
ject of inquiry, and consequently the decisions relating to the subject
recognize that wide latitude is permissible, but at the same time the
courts invariably sound a warning that such evidence may easily wander
too far afield. The relationship between the father, the defendant, and
his son, plaintiff's husband, and the plaintiff herself, would be competent,
but, for example, the number of parties the plaintiff had while she was
living in her own house or the amount of money the defendant, J. R.
Hankins, gave to his own daughters for school purposes, or that the
defendant had provided in his will that his body be cremated, constituted
items of evidence wholly foreign to the issue. These were not declara-
tions made by the defendant to the plaintiff or to her husband, or about
either of them, showing any bias, animus or hostility to the plaintiff or
her marriage, and, therefore, had no proper place in the case.

Having determined that a new trial was properly granted, the court
deems it unnecessary and inadvisable to undertake to discuss further the
exceptions presented in the defendant's appeal.

Affirmed.