CARL B. RIDENHOUR v. AMANDA K. MILLER AND LUCY K. KLUTTZ.

(Filed 31 October, 1945.)

**1. Husband and Wife §§ 32, 34—**

In an action by plaintiff against defendants, alleging that the affections of his wife had been alienated by them, the law imposes upon plaintiff the burden of showing by competent evidence—(1) That he and his wife were happily married, and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; (3) that the wrongful and malicious acts of defendants pro-

duced and brought about the loss and alienation of such love and affection. Failure to so show makes the action vulnerable to nonsuit.

**2. Same—**

> While parents and near relatives must act in good faith in dealing with the marital rights of a member of the family, nevertheless they occupy a different position from a stranger in these matters. And the mere fact that defendants, sisters of plaintiff's wife, permitted his wife and children to live with them, after the separation, is not sufficient to show bad faith on their part, in view of the family relationship.

APPEAL by plaintiff from *Gwyn, J.,* at February-March Term, 1945, of CABARRUS.

This is an action instituted by plaintiff against the defendants, who are sisters of plaintiff's wife, alleging that defendants unlawfully and maliciously alienated the affections of his wife, and seeking damages therefor.

The pertinent facts are substantially as follows: The plaintiff alleges that the defendants maliciously caused the plaintiff's wife to leave him on 14 December, 1943. That the defendants "set about a course of action, a course of speech, and a course of conduct, which was knowingly, purposely, wrongfully, ruthlessly, wickedly and maliciously designed and planned to alienate and destroy the genuine love and affection which this plaintiff's wife held for him, and to wreck and destroy the home of this plaintiff and his wife, and to destroy their happiness, and to induce, procure and compel, by virtue of their superior positions and financial power, this plaintiff's wife to leave and abandon him, and to abandon and forsake this plaintiff, the home and the two children which had been born to the marriage."

Plaintiff testified that prior to the separation the defendants gave his wife and children many presents, consisting of clothing, food, and articles of furniture for the home, but that he did not object to Mrs. Kluttz and Mrs. Miller helping his wife.

On the morning of 14 December, 1943, the plaintiff's wife announced she was leaving him. She assigned three reasons, according to plaintiff's testimony, "first was because I wouldn't help her do the work; second, because I cursed her; third, because I told her she couldn't work. That is why she said she left." Immediately after plaintiff's wife announced her intention to leave him, the plaintiff took her to Mr. Hartsell's office to see if they could get a divorce and they were informed they had no grounds for divorce. That afternoon, the defendant, Mrs. Kluttz, was in the Ridenhour home and said, "I am mighty sorry, Carl, you have two fine children, they certainly are nice and obedient . . . if you can't get along together it is better for you to be separated." Mrs. Ridenhour

sent for the other defendant and upon her arrival, in the presence of Mrs. Kluttz, Mrs. Ridenhour and the plaintiff, Mrs. Miller said, "Carl, I didn't know anything about this." The plaintiff said "Neither of you (referring to these defendants) tried to reconcile or advise Mrs. Ridenhour or myself." The plaintiff further testified that so far as he knew Mrs. Miller did not know anything about their trouble until the day they separated. That up to the day of separation he had never heard any complaint from his wife or anyone else about conditions in the home not being satisfactory.

On 15 December, 1943, these same parties undertook to divide up the household goods of the Ridenhours and to reach an agreement about the sale of the home to Mrs. Ridenhour. In this connection, the plaintiff testified: "Mrs. Miller was trying to advise to the best of her ability." Later, as Mrs. Miller was leaving, the plaintiff told her she had broken up his home, she had taken his wife and children. Mrs. Miller replied, "Yes, Carl Ridenhour, and I will do it again." Mrs. Ridenhour and her two minor children had gone to the Miller home the day before and they continued to live there for several months after the separation.

There is evidence that plaintiff tried almost daily to see his wife and children while they were living in the Miller home, later in the Kluttz home, and still later in the home of a Mrs. Litaker. These defendants were not friendly at all times, sometimes refusing to admit plaintiff into their respective homes. The wife has likewise refused to see him in her present home, where she and her children reside with Mrs. Litaker.

At the conclusion of plaintiff's evidence, judgment of nonsuit was entered. Plaintiff appealed to the Supreme Court, assigning errors.

*B. W. Blackwelder for plaintiff.*
*Hartsell & Hartsell and Bernard W. Cruise for defendants.*

DENNY, J. The disposition of this appeal turns upon whether or not plaintiff introduced sufficient evidence to entitle him to have his case submitted to a jury.

Upon the institution of this action against the defendants, alleging the affections of his wife had been alienated by them, the law imposed upon him the burden of showing, by competent evidence, the following: (1) That he and his wife were happily married, and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; (3) that the wrongful and malicious acts of the defendants produced and brought about the loss and alienation of such love and affection. *Hankins v. Hankins,* 202 N. C., 358, 162 S. E., 766.

18—225

In the instant case there is no evidence tending to show that the defendants or either of them advised with or counseled plaintiff's wife with respect to her marital relationship prior to the separation. The evidence discloses that these defendants did give Mrs. Ridenhour, who is their sister, substantial gifts. Some of the gifts were for her personally, some for the children, others were for the use and benefit of the family. However, at the time these gifts were made, the plaintiff assigned no ulterior motive on the part of these defendants. He testified, "I did not object to Mrs. Kluttz and Mrs. Miller helping my wife." Moreover, there is no allegation in the complaint or evidence adduced in the trial below, to the effect that plaintiff's wife since the separation has by her words or conduct intimated a desire to effect a reconciliation with him, or that one might have been made except for the unlawful and malicious interference of these defendants. *Townsend v. Holderby,* 197 N. C., 550, 149 S. E., 855; *Brown v. Brown,* 124 N. C., 19, 32 S. E., 320. In fact, we think the record tends to show otherwise. While parents and near relations must act in good faith in dealing with the marital rights of a member of the family, nevertheless they occupy a different position from a stranger in these matters. *Johnston v. Johnston,* 213 N. C., 255, 195 S. E., 807. *Cf. Barker v. Dowdy,* 224 N. C., 742, 32 S. E. (2d), 265, and *Cottle v. Johnson,* 179 N. C., 426, 102 S. E., 769. And the mere fact that these defendants permitted plaintiff's wife and children to live with them is not sufficient to show bad faith on their part, in view of the family relationship. *Townsend v. Holderby, supra; Powell v. Benthall,* 136 N. C., 145, 48 S. E., 598.

The conduct of these defendants may not have been exemplary towards plaintiff at all times, but plaintiff's evidence, when taken in the light most favorable to him, is insufficient to show that the alienation of the affections of his wife was brought about wrongfully and maliciously by these defendants. *Powell v. Benthall, supra.*

The exceptions interposed to the refusal of his Honor to admit certain orders of the court, relative to the custody of plaintiff's children, need not be considered. Had the proffered evidence been admitted it would not have in any way affected our decision.

The judgment of nonsuit is

Affirmed.