VIRGINIA HALL KUHN

*v.*

MYRTLE COOPER

(No. 10694)

Submitted April 26, 1955.    Decided May 31, 1955.

*W. Hayes Pettry, Ned H. Ragland,* for plaintiff in error.

*Pettigrew, Samms & Pettigrew,* for defendant in error.

LOVINS, PRESIDENT:

This is an action of trespass on the case to recover damages for claimed alienation of affections of plaintiff's husband. The action was brought by Virginia Hall Kuhn, hereinafter designated as plaintiff, against Myrtle Cooper, hereinafter referred to as defendant, in the Circuit Court of Kanawha County. A jury trial resulted in a verdict for the plaintiff for $12,500.00. The trial court, having overruled a motion to set aside the verdict, entered judgment for the amount of the verdict. The defendant prosecutes this writ of error.

The plaintiff and defendant were married women and prior to the alleged alienation lived with their respective husbands, the plaintiff at St. Albans and the defendant at or near Summersville, West Virginia. The defendant became acquainted with Clayburn C. Kuhn in March, 1952. At that time the plaintiff and her husband had three children. There is evidence showing that the plaintiff and defendant at the time of the trial had separated from their husbands.

It seems that after the plaintiff's husband and the defendant met, they associated together. There are several episodes detailed in the record as well as purchases of

certain articles of merchandise by the defendant, afterwards used by the plaintiff's husband, and also given to the plaintiff's husband and daughter which substantiates this assumption. Among other things is a watch, a clock, a shot gun, a toilet kit or case, luggage, a ring, shoes and a jacket or vest. It is not clearly shown that all of these articles were given to the plaintiff's husband. The defendant denies giving him the shot gun, the ring, the clock, watch, watch band and luggage. Defendant admits that being short of ready cash, she had used her credit to purchase various articles and then turned them over to the plaintiff's husband, who would thereafter pay her cash for such articles. But she denies in the main any gifts to plaintiff's husband.

The plaintiff's husband and the defendant were named in two warrants charging them with adultery. On the trial on one of such warrants, they were acquitted. On the other, they were convicted and appealed the same to the Intermediate Court of Kanawha County where the charge was dismissed.

There is proof that the defendant and the plaintiff's husband went to Washington, Virginia, for the purpose of purchasing an automobile, the plaintiff having theretofore driven her husband's car to that state and had an accident on such trip. The cash payment required in such purchase in the amount of $450.00 was paid by the defendant and the title to the automobile was taken in her name, but later transferred to plaintiff's husband. There is proof showing that the plaintiff and her children were staying at her father's home near Washington, Virginia, at the time the automobile was purchased. After the trial on one of the charges of adultery, the defendant drove her automobile to St. Albans, West Virginia, parked at or near the residence of the plaintiff. The plaintiff was forbidden to go into her home by her husband and the defendant remained there with the plaintiff's husband while plaintiff was forced to spend the remainder of the night with her next door neighbor. The plaintiff so testified and her testimony is corroborated to a certain extent

by the person who lives next door to plaintiff's residence. On one occasion the defendant and plaintiff's husband were arrested at defendant's apartment on Truslow Street in the City of Charleston. True, the defendant denies that anything improper occurred there. The defendant, when answering a knock at her door, after a short delay, came to the door clothed in her night clothes with a house-robe on. The plaintiff's husband was in the kitchen of the apartment ostensibly watching for persons who were engaged in pilfering or damaging the husband's and defendant's automobile. The defendant cooked morning meals and packed lunches for the plaintiff's husband on numerous occasions. It seems that the husband of the plaintiff was accustomed to visiting next door at the home of friends of the defendant. On the occasion when the defendant and plaintiff's husband were arrested, such friends testified that the plaintiff's husband had only been in defendant's apartment for about five minutes.

Relative to the trip to Washington, Virginia, the defendant introduced two witnesses who are husband and wife and who testified distinctly that they accompanied the defendant and the husband of the plaintiff to Washington, Virginia. According to these witnesses, as well as the defendant, the plaintiff's husband left them and the defendant at a garage where the automobile was purchased. The defendant and these two witnesses started on the return trip to Charleston immediately.

It is proper at this point to say that after the taking of evidence had ended, these two witnesses testified in chambers in the presence of the trial judge and counsel for the parties that their testimony as to accompanying the defendant and the plaintiff's husband to Washington, Virginia, was false. The trial court permitted such retraction to be read by the jury and also permitted cross examination by the defendant's counsel. It is to be noted that the defendant's testimony relative to the trip to Virginia coincides with the testimony of the witnesses who retracted their statements.

There is other testimony showing that the plaintiff's

husband called on the defendant on two or more occasions at her place of business near Summersville, West Virginia. One witness testified that on one of these occasions, the plaintiff's husband hugged and kissed the defendant.

The defendant on her part denies any wrongdoing or intent to alienate the affection of plaintiff's husband and makes explanation of the same as above noted relative to the purchase of merchandise and the automobile in that she says that plaintiff's husband had no credit. She also denies that plaintiff's husband caressed her at Summersville. She testified that she has no designs on the plaintiff's husband or intent to alienate his affections. She explains her association with the plaintiff's husband by saying that he belonged to a secret order or lodge and that plaintiff's husband was also a member of a secret order or lodge allied or associated with one the defendant belonged to and that their association began by reason of a custom in such secret order or lodge of selecting a "secret pal" which arrangement lasted for one year.

Concerning the trip to Virginia, the plaintiff offered a photostatic copy of a registration card at a hotel in Front Royal, Virginia. This photostatic copy was not admitted in evidence, but only identified. Likewise, a photostatic copy of a registration card in a motel near the City of Charleston was identified, but not admitted in evidence. These documents were rejected because of the failure to show that the defendant was connected with such registrations.

The defendant attempted to introduce proof to show that the plaintiff and her husband were married in haste after the divorce of the husband, ending a prior marriage, became effective and offered a letter to show that the plaintiff and her husband, prior to their marriage, associated together, although the husband of the plaintiff was then married to a woman other than the plaintiff.

The defendant's husband testified in behalf of the plaintiff. He says that he found a fountain pen in the home

of the plaintiff with his initials thereon. He also testified that the plaintiff admitted to him in buying certain articles of merchandise for plaintiff's husband. In one particular, the defendant's husband says that the defendant told him she had bought a shot gun for her "honey", for his use to shoot defendant's husband.

The defendant on this writ of error makes numerous assignments of error, many of which are immaterial and do not call for, or merit discussion, being somewhat frivolous.

The errors may be classified as follows: (a) the admission of improper evidence; (b) the rejection of proper evidence; (c) in permitting the retraction of testimony made by the two witnesses adduced by the defendant to be read to the jury; (d) in refusing to permit the introduction of testimony showing that the plaintiff and her husband associated together prior to their marriage and while the plaintiff's husband was married to another person; (e) in failing to receive and record a finding by the jury allocating damages as compensatory and punitive; (f) in refusing to direct a mistrial because of retractions made by the two witnesses above mentioned; (g) in refusing to give proper instructions and the giving of improper instructions over the objection of the defendant; (h) in refusing to set aside the verdict; (i) in overruling the motion for a new trial.

This action, like many others, involving domestic relations and their break-up or severance, discloses much conflict in the testimony adduced by the parties. As stated above, the assignments of error are somewhat general and immaterial, and we think the following discussion will disclose such immateriality, as well as sufficient grounds to support the verdict.

The gist of an action for alienation of affections is the loss of consortium. *Gross* v. *Gross*, 70 W. Va. 317, 321, 73 S. E. 961. The term consortium is a general term and includes the right of the injured spouse to the affection, society, assistance, companionship and comfort of the

spouse whose affections are alienated. 42 C.J.S., Husband and Wife, §665. In order to maintain an action for alienation of affections, it is necessary to prove the wrongful conduct of the defendant, the loss of consortium and a causal connection between the conduct and the loss. 27 Am. Jur., Husband and Wife, §523; *Collier* v. *Perry* (Tex.) 149 S. W. 2d 292; *Martin* v. *Ball* (Ga.) 119 S. E. 222. A "Cause of action for 'alienation of affections' consists of three elements: Wrongful conduct of defendant, plaintiff's loss of affection or consortium of other spouse, and causal connection between such conduct and loss." *Wallace* v. *Wallace,* (Mont.) 279 P. 374.

The declaration in the instant case contains two counts. The first relates to enticement of plaintiff's husband, but does not charge adultery. The second count charges adulterous relations having existed between the plaintiff's husband and the defendant. The defendant contends that adultery was not proved and cites cases showing the degree of proof required to support a finding of adultery in divorce cases. "The charge of adultery in a divorce suit must be proven by clear, positive and satisfactory evidence. To warrant such a finding, 'the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion * * *.' " *Wolfe* v. *Wolfe,* 120 W. Va. 389, 198 S. E. 209. See *Watson* v. *Watson,* 112 W. Va. 77, 163 S. E. 768; *Murrin* v. *Murrin,* 94 W. Va. 605, 119 S. E. 812.

We do not pass on the question of whether the high degree of proof of adultery required in divorce cases is required in the instant action.

But even applying the high standard of proof of adultery required in a suit for divorce, the record in the instant case sufficiently shows that adulterous relations existed between the defendant and the plaintiff's husband. This is shown when all of the episodes detailed in the record are considered. An unbiased reasonable person would be convinced of that fact upon evaluating and considering all of the occurrences indicative of illicit relations between the plaintiff's husband and the defendant.

We are convinced that the defendant engaged in adulterous conduct with the plaintiff's husband.

The defendant contends that the trial court should have admitted proof of the plaintiff's wrongful and improper conduct prior to her marriage. Evidence of Mrs. Kuhn's alleged misconduct is shown in the record by an avowal. The alleged misconduct consists of an accusation that Mrs. Kuhn married her husband on the 11th day of August, 1938, he having been divorced from his third wife on the 11th day of June, 1938, but restrained from remarrying for sixty days. An undated letter allegedly written to plaintiff by her husband, prior to her marriage to him was offered. We have found no cases in this jurisdiction discussing the admissibility of such evidence. There are, however, cases in other jurisdictions which disclose that the actions and conduct of a plaintiff in actions at law similar to the instant case, when not too remote, are admissible in mitigations of damages. In some instances, similar evidence has been admitted to show that the alienation of affections was caused by plaintiff's conduct. See *Jackson* v. *Jackson* (Civ. App. Texas) 35 S. E. 2d 830; *Allen* v. *Rossi* (Me.) 146 Atl. 692; *Helminiak* v. *Przekurat* (Wisc.) 198 N. W. 746; *Ward* v. *Thompson* (Wisc.) 131 N. W. 1006; *Smith* v. *Smith* (S. D.) 173 N. W. 843; *White* v. *White* (Kan.) 90 P. 1087; *Harper* v. *Harper* (4th C.C.A.) 252 Fed. 39; 68 A. L. R. 561, 590, wherein the cases are collated and discussed. True, the foregoing authorities frequently relate to the chastity of a wife whose affections have been alienated and in some instances relate to the chastity or conduct of plaintiff. We think, however, that evidence showing either state of facts is not applicable nor admissible in the instant case for the following reasons: (a) The events offered to show the conduct of the plaintiff are remote, having occurred approximately sixteen years before the institution of this suit. (b) They are irrelevant for the reason that there is nothing to show that such situations caused the plaintiff's husband to transfer his affections from the plaintiff to the defendant.

The defendant offered no proof to show that plaintiff's husband withdrew his affection from the plaintiff because the plaintiff married her husband immediately upon the expiration of a sixty day period of restraint after his divorce from his prior wife. Moreover, we fail to perceive any immoral conduct in the conduct of plaintiff.

The defendant contends that the retraction of testimony of the two witnesses she offered who testified as to the trip to Washington, Virginia, should not have been read to the jury. This retraction, having been brought to the attention of the trial court, called for some action on the part of the trial judge. It was highly reprehensible for the two witnesses to testify falsely.

It is to be noted also that the admittedly false testimony of such witnesses, in the main, coincide with similar testimony by the defendant. Such retracting witnesses also testified relative to the arrest of defendant and plaintiff's husband at defendant's apartment.

We know of no authority which requires that defendant should be present when such retraction was made by her witnesses, this being a civil action for the recovery of damages. Neither are we aware of any principle which prevented the trial court from causing the detailed retraction to be read to the jury. Especially is this true, when, as the record shows, the trial court permitted the defendant to cross-examine the two retracting witnesses. Certainly such conduct by the witness was prejudicial to the defendant, but she ran the risk of such prejudice when she produced two witnesses and vouched for their credibility. Thereafter such witnesses experienced a change of heart and attempted to tell the truth and denied in detail that they had accompanied the defendant and the plaintiff's husband on the trip to Washington, Virginia.

We have carefully examined the other assignments of error, with respect to the admission and rejection of tendered evidence. We see no error in the action of the court relative to the admission or rejection of testimony.

Alienation of affections is distinguished from an action for criminal conversation. In an alienation of affections action, if only enticement or artifice is shown, malice must be proved to warrant a recovery. But, if adultery is proved, such proof dispenses with the necessity for proving malice. *Alex* v. *Strickland* (Okla.) 239 P. 596.

In an action for criminal conversation a physical debauchment of plaintiff's spouse is a necessary element, and the alienation of affections thereby resulting is merely a matter of aggravation. *Darnell* v. *McNichols* (Tenn.) 122 S. E. 2d 808.

Upon the consideration of the entire record in this case, we are of opinion and so hold that the plaintiff introduced evidence sufficient to sustain both counts of her declaration.

The assignment of error relative to giving and refusing tendered instructions is general. We have made a careful examination of the instructions tendered and given and instructions refused. We find no error in the action of the court with respect thereto.

The defendant complains that the court should have received and recorded the verdict which separated the punitive and compensatory damages. As stated by the trial judge, no interrogatory had been propounded to the jury, and there was no occasion for the rendition of a special verdict dividing the damages. The trial court being aware of that fact, refused to accept the first finding of the jury separating punitive and compensatory damages, sent the jury to their room to further consider their verdict. The jury returned to their room, gave further consideration to the evidence, and returned a verdict as hereinabove stated. There was no error in the action of the court in that particular.

Defendant complains that the verdict is excessive. There is proof which shows that the plaintiff has been deprived of consortium of her husband. Her husband did not testify nor is there any proof in the record which

would enable an appellate court to say as a matter of law that the consortium of the plaintiff's husband was worth less than the jury found. There is no evidence of biased, prejudicial or improper motives affecting the jury in the finding the verdict. We hold that the verdict is not excessive.

In accordance with the foregoing, we find no prejudicial error and therefore affirm the judgment of the Circuit Court of Kanawha County.

*Affirmed.*