[No. G028495. Fourth Dist., Div. Three. Mar. 28, 2002.]

JACQUELINE R. et al., Plaintiffs and Appellants, v.
HOUSEHOLD OF FAITH FAMILY CHURCH, INC., Defendant and
Respondent.

JACQUELINE R. et al., Plaintiffs and Appellants, v.
ORLANDO BARELA, Defendant and Respondent.

**COUNSEL**

Law Offices of Philip P. DeLuca and Philip P. DeLuca for Plaintiffs and Appellants.

McKay, Byrne & Graham, Michael A. Byrne and April Paradise-Switzer for Defendants and Respondents.

**OPINION**

**RYLAARSDAM, J.**—In what appears to be a case of first impression in California, the trial court granted summary judgment in favor of defendants Household of Faith Family Church, Inc. (the church) and Pastor Orlando Barela (the pastor) after concluding the pastor was not liable in tort as a

matter of law for engaging in sexual conduct with the wife of a parishioner who came to him for marriage counseling. Plaintiffs Jacqueline R. and Abel R. argue the same tort liability imposed on licensed marriage counselors for similar conduct should apply to unlicensed, pastoral marriage counselors, despite the holding in *Nally v. Grace Community Church* (1988) 47 Cal.3d 278 [253 Cal.Rptr. 97, 763 P.2d 948], which refused to impose a professional duty of care on pastoral counselors who provided spiritual counseling to a suicidal church member before he committed suicide. They further argue the trial court improperly decided an issue of fact regarding the consensual nature of the sexual activity.

Defendants contend *Nally* controls the outcome of this case and the trial court did not improperly weigh the evidence. We agree *Nally* precludes us from holding the pastor to the same standard of care applicable to a licensed marriage counselor under the facts of this case. We further conclude the evidence, viewed in the light most favorable to plaintiffs, shows the sexual activity was consensual, and we therefore affirm.

## Facts

The pastor denied engaging in sexual misconduct with Jacqueline; however, any disputed facts are construed here, as they were below, in plaintiffs' favor.

Plaintiffs were members of the church. They had been experiencing marital problems, and Abel went to the pastor for marriage counseling; Jacqueline subsequently joined in the counseling sessions. After only a few sessions, Abel moved out of the home. Before the couple's first joint counseling session, the pastor approached Jacqueline and indicated his interest in her. He hugged and kissed her several times that day; she "half resisted" by putting her hand on his chest. She told him she was afraid they would be caught. After the couple's first joint counseling session, the sexual contact between the pastor and Jacqueline increased for a short period of time and then ended altogether.

In their initial complaint (Super. Ct. Orange County, 1999, No. 806678), plaintiffs alleged the following causes of action against defendants: (1) fraud and deceit—intentional misrepresentation; (2) gross professional negligence; (3) gross general negligence; (4) general negligence; (5) sexual harassment; (6) sexual battery; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; and (9) loss of consortium. They further alleged the church was liable for the pastor's conduct as his employer under the theory of respondeat superior.

The pastor was dismissed from the initial complaint for tactical reasons; plaintiffs filed a new complaint containing identical allegations against him in a second action (Super. Ct. Orange County, 2000, No. 00CC01792), and the cases were consolidated in the trial court. Before the second complaint was filed, however, defendants moved for summary judgment or, alternatively, for summary adjudication. The motion was granted in part on the causes of action for fraud, sexual harassment, and loss of consortium, but denied as to the other causes of action.

Seven months later, the pastor moved for summary judgment in the second case, raising the same arguments made in the earlier motion. This time, the court concluded that, even construing all of the disputed facts in plaintiffs' favor, they failed to state a cause of action against the pastor. "This is true because the plaintiff's case is essentially a complaint alleging tortious liability where two consenting adults freely and mutually consent to some sexual foreplay and various discussions of sexual activity, notwithstanding they are both married to other persons. [¶] Plaintiff's theory hangs on the fact that Orlando was a pastor of her church and the sexual activities and conversations occurred in the context of marital counseling to plaintiff by her pastor. Morally reprehensible as Orlando's advances were under the subterfuge of marital counseling (if, indeed, they occurred), his status as a pastor/counselor does not, under the law, bestow upon him any duty beyond that of the ordinary lay person. Where consensual sexual activity is undertaken between lay persons under the circumstances urged by this plaintiff, no cause of action arises."

Having granted summary judgment in the pastor's favor, the court subsequently granted the church's second motion for summary judgment concluding that, because the pastor's conduct was not actionable, "the church is off the hook, too."

DISCUSSION

*Summary Judgment Was Properly Granted as a Matter of Law*

 1. *An Independent Legal Duty Is Required to Hold the Pastor Liable*

Plaintiffs contend that they suffered an actionable injury and that the court erred by granting summary judgment for defendants as a matter of law. They argue defendants should not be immunized by the pastor's status as a clergyman because he held himself out as a marriage counselor and, in that

capacity, he owed them a duty of care not to engage in sexual relations with Jacqueline. They further contend " '[m]arriage counseling' by its very nature is secular, not religious." Their arguments are not supported by the evidence or the law.

██ When a defendant moves for summary judgment contending the action has no merit, the motion must be granted " 'if all the papers submitted show' that 'there is no triable issue as to any material fact' [citation]—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' [citation]." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493]; Code Civ. Proc., § 437c, subds. (a) & (c).) The court must view the evidence, and all " 'inferences' reasonably drawn therefrom [citation], . . . in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843; Code Civ. Proc., § 437c, subd. (c).)

██ Defendants were entitled to summary judgment if the trial court correctly concluded the pastor owed plaintiffs no legal duty. ██ "[T]o prove facts sufficient to support a finding of negligence, a plaintiff must show that defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate cause or legal cause of the resulting injury. [Citation.]" (*Nally v. Grace Community Church, supra,* 47 Cal.3d at pp. 292-293.) "Without such a duty, any injury is 'damnum absque injuria,'—injury without wrong. [Citations.]" (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 6, p. 61.) For that reason "[d]uty, being a question of law, is particularly amenable to resolution by summary judgment. [Citation.]" (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

██ Duty is the crux of this case. ██ Without it, all that remains is a lawsuit for alienation of affections—a "long-dead cause[] of action. [Citations.]" (*Smith v. Pust* (1993) 19 Cal.App.4th 263, 269 [23 Cal.Rptr.2d 364], fn. omitted [discussing anti-heart-balm statutes].) "The gist of the tort is not sexual intimacy but an interference with the marital relation that changes one spouse's mental attitude toward the other." (Prosser & Keeton, Torts (5th ed. 1984) § 124, p. 918, fn. omitted.) The Legislature abolished this and other related causes of action in 1939 when it enacted Civil Code section 43.5. As we have previously noted, " '[a]t common law, the right of action for damages for alienation of a wife's affection is in some measure based upon the same obsolete idea that the wife is one of the husband's chattels, and that

her companionship, her services and her affection are his property, for the loss of which, by wrongful inducement on the part of another man, the husband ought to be compensated with money. . . .' [Citation.]" (*Smith v. Pust, supra,* 19 Cal.App.4th at p. 269, fn. 5.)

■ Nonetheless, tort liability is not precluded if the alleged sexual misconduct breached an independent duty of care. (*Smith v. Pust, supra,* 19 Cal.App.4th at p. 269; *Richard H. v. Larry D.* (1988) 198 Cal.App.3d 591, 595 [243 Cal.Rptr. 807].) "For instance, a physician who engages in sexual relations with a patient may be liable for professional negligence if his conduct constitutes a 'breach of the duty of care owed to the patient by the physician *within* the scope of the patient-physician relationship.' [Citation.]" (*Richard H. v. Larry D., supra,* 198 Cal.App.3d at p. 595.) In *Richard H.*, the court concluded the plaintiff could state causes of action for fraud, professional negligence, and negligent infliction of emotional distress against the psychiatrist who had a sexual relationship with the plaintiff's wife because the misconduct took place while the psychiatrist was treating the couple for marital problems. (*Id.* at p. 596.) In *Smith,* however, we concluded a therapist who engaged in sexual conduct with a patient did not owe a duty of care to her husband because the husband was not a patient and the therapy was not intended to improve the marriage. (*Smith v. Pust, supra,* 19 Cal.App.4th at p. 272.)

■ Both of these cases recognized that, even when the substance of the suit was alienation of affections, a cause of action may exist based on an independent duty of care if a plaintiff can show there was a professional relationship and a connection between the purpose of the professional relationship and the wrongful conduct. (*Smith v. Pust, supra,* 19 Cal.App.4th at pp. 269-270 [conduct not immune from tort liability if it breached duty of care independent of obsolescent causes of action]; *Richard H. v. Larry D., supra,* 198 Cal.App.3d at p. 595 [when such a duty exists, fraud claim not barred by Civil Code section 43.5 and breach of duty supports action for professional negligence].)

■ In this case, Abel first sought marital counseling from the pastor for himself and, in the course of that counseling, revealed that there were sexual problems in the marriage. The pastor then purportedly used that information to interfere with plaintiffs' marriage while continuing to provide them with marital counseling. Under these facts, and in light of the cases just discussed, one could argue that an independent duty of care existed on the part of the pastor to refrain from engaging in behavior harmful to plaintiffs' marriage. However, those cases involved claims against *licensed* professionals; therefore, they are not dispositive of the issue here—whether an independent duty

of care to refrain from engaging in sexual conduct that is harmful to the person being counseled exists in the context of pastoral counseling.

### 2. *Nally Precludes Holding a Pastoral Counseling Relationship to the Same Standard of Care Applicable to a Professional Counseling Relationship*

In *Nally v. Grace Community Church, supra,* 47 Cal.3d 278, the California Supreme Court refused to impose liability on clergy who provided counseling to a suicidal church member but failed to prevent his suicide. The duty at issue there arose from the nature of the special relationship between the suicidal person and those who had custody or control over him, e.g., a hospital, rather than from a specific duty to prevent suicide. However, the court also examined earlier cases which "recognized that a cause of action may exist for *professional malpractice* when [treatment] falls below the standard of care for the profession, thus giving rise to a traditional malpractice action." (*Id.* at pp. 295-296, fn. omitted.)

In determining whether pastoral counselors should be held to the same standard of care that might conceivably apply to a licensed therapist under similar conditions, the court discussed public policy considerations weighing against imposing such a duty. The court noted, "the Legislature has exempted the clergy from the licensing requirements applicable to marriage, family, child and domestic counselors [citation] and from the operation of statutes regulating psychologists [citation]. In so doing, the Legislature has recognized that access to the clergy for counseling should be free from state imposed counseling standards, and that 'the secular state is not equipped to ascertain the competence of counseling when performed by those affiliated with religious organizations.' [Citation.]" (*Nally v. Grace Community Church, supra,* 47 Cal.3d at p. 298.) The court concluded the trial court properly granted defendants' motion for nonsuit on plaintiffs' claims for clergyman malpractice and negligence and that to hold otherwise would contravene public policy. (*Id.* at pp. 299-300.)

Nevertheless, sexual misconduct is tangibly different from suicide counseling. Licensed professionals are statutorily prohibited from engaging in sexual misconduct with their clients. (See *Atienza v. Taub* (1987) 194 Cal.App.3d 388, 392-393 [239 Cal.Rptr. 454] [liability exists if sexual misconduct committed under the guise of rendering professional services]; Bus. & Prof. Code, § 6146, subd. (c)(3) [defining professional negligence]; Civ. Code, § 43.93, subd. (b) [cause of action against psychotherapist for sexual contact with patient].) However, it is undisputed that the

pastor was not a licensed marriage counselor, and, as pointed out in *Nally*, pastoral counselors are expressly exempted from state licensing requirements. "[P]riest[s], rabbi[s], [and] minister[s] of the gospel of any religious denomination when performing counseling services as part of [their] pastoral or professional duties . . . ," are exempted from the licensing provisions applicable to marriage, family, and child counselors. (Bus. & Prof. Code, § 4980.01, subd. (b).)

Plaintiffs imply this exemption violates the First Amendment and argue that the same duty of care should apply to licensed marriage counselors and pastoral marriage counselors alike. While the First Amendment is not a bar to neutral, generally applicable laws applied to religious practitioners (*Employment Div., Dept. of Human Res. v. Smith* (1990) 494 U.S. 872 [110 S.Ct. 1595, 108 L.Ed.2d 876]; *City of Boerne v. Flores* (1997) 521 U.S. 507 [117 S.Ct. 2157, 138 L.Ed.2d 624]), here, the Legislature has chosen not to regulate pastoral counseling. Consequently, the First Amendment is not implicated in the *absence* of such regulation.

The two federal cases plaintiffs rely on do not persuade us to reach a different conclusion. In *Sanders v. Casa View Baptist Church* (5th Cir. 1998) 134 F.3d 331, the court concluded the minister could be held liable for malpractice and breach of his fiduciary duties as a marriage counselor. (*Id.* at pp. 337-338.) He held himself out as being the equivalent of a licensed professional, engaged in sexual relations with two church employees who saw him for marriage counseling, and revealed their confidences. (*Ibid.*) The minister argued the First Amendment barred the plaintiffs' claims. The court disagreed "because the jury found that [the minister] held himself out as possessing the education and experience of a professional marriage counselor, [and therefore] his counseling activities with the plaintiffs were judged, not by a standard of care defined by religious teachings, but by a professional standard of care . . . ." (*Id.* at p. 337.)

Similarly, in *Dausch v. Rykse* (7th Cir. 1994) 52 F.3d 1425, the court reversed the dismissal of the plaintiff's claims against the pastor for professional negligence and violation of the state's psychotherapy statute based on allegations the pastor "held himself out, and was held out by the church defendants, to be a duly qualified person engaged in providing psychological counseling to members of his congregation." (*Id.* at p. 1428.) The plaintiff alleged the defendant "told her that she needed secular psychological, not religious, counseling, and that he was qualified to provide it" and "represented that he was a capable, trained professional on whom she could rely to assist her with her personal problems." (*Id.* at p. 1428, fn. 3.)

Plaintiffs argue *Sanders* and *Dausch* apply to the facts of this case because the pastor held himself out as a secular marriage counselor. On that basis they conclude he should be liable pursuant to Business and Professions Code section 4980.10, which provides: "A person engages in the practice of marriage, family, and child counseling who performs or offers to perform or holds himself or herself out as able to perform such a service for remuneration in any form, including donations." We do not decide whether this provision applies despite the statutory exemption for pastoral counselors (Bus. & Prof. Code, § 4980.01, subd. (b)) because plaintiffs' contention is not supported by the evidence. At most, plaintiffs showed the pastor provided counseling to them as church members that was based on his status as a clergyman and that he also provided counseling to nonmembers who wanted to be married by him. Such counseling was part of his church ministry, and there is no evidence he received payment for his counseling services.

While we neither approve nor disapprove of the holdings in *Sanders* and *Dausch*, we conclude both cases are factually distinguishable because the defendants explicitly held themselves out as having the education and training of licensed marriage counselors. Here, there is no evidence the pastor did or said anything that would subject him to professional counseling standards. Consequently, he did not owe plaintiffs the same independent duty of care required of licensed professionals.

### 3. *Whether the Confidential Nature of the Pastoral Counseling Relationship May Give Rise to a Legal Duty Has Not Been Considered*

We have not considered whether a confidential relationship existed between the pastor and plaintiffs which may have given rise to an independent legal duty because the parties did not tender this issue. We note, however, that courts in other jurisdictions have considered the issue with mixed results. (See, e.g., *F.G. v. MacDonell* (1997) 150 N.J. 550 [696 A.2d 697, 704] [action for breach of fiduciary duty appropriate form of relief for sexual misconduct during course of counseling parishioner]; *Destefano v. Grabrian* (Colo. 1988) 763 P.2d 275, 289 [priest, as person in position of trust, owed duty to refrain from conduct carrying risk of harm to couple he counseled]; cf. *Cherepski v. Walker* (1996) 323 Ark. 43 [913 S.W.2d 761, 767] [claim for breach of fiduciary duty equivalent to claim for alienation of affections]; *Schmidt v. Bishop* (S.D.N.Y. 1991) 779 F.Supp. 321, 326 [claim pastor violated fiduciary duty another way to contend he committed malpractice].)

*The Court Did Not Err in Concluding the Relationship Was Consensual*

Plaintiffs argue the trial court improperly decided factual issues by concluding the sexual relationship between Jacqueline and the pastor was

consensual. The lack of consent, at best, would support one element of her cause of action for sexual battery. (Civ. Code, § 1708.5.) However, there is no evidence she found the touching offensive. ▮ "A cause of action for sexual battery under Civil Code section 1708.5 requires the batterer intend to cause a 'harmful or offensive' contact and the batteree suffer a 'sexually offensive contact.' " (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1225 [44 Cal.Rptr.2d 197].) Moreover, evidence Jacqueline resisted the pastor's advances or, at times, told him to stop, was accompanied by her statements that she was afraid they would be caught, not that she found his advances offensive or unwelcome. Consequently, viewing the evidence in the light most favorable to plaintiffs, the trial court did not err by concluding the relationship was consensual.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Sills, P. J., and Bedsworth, J., concurred.

A petition for a rehearing was denied April 16, 2002, and appellants' petition for review by the Supreme Court was denied July 10, 2002. Brown, J., did not participate therein.