IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

————————

No. 14-0280

————————

**FILED**

**June 16, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA *ex rel.*,
JUSTIN S. GOLDEN, SR., &
NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, and
NYLIFE SECURITIES, LLC,
Petitioners

v.

THE HONORABLE TOD J. KAUFMAN, Judge of the Circuit Court of
Kanawha County, West Virginia; &
MARK A. MILLER
Respondents

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

_____

Submitted: May 7, 2014
Filed: June 16, 2014

Mychal S. Schulz, Esq.
Arie M. Spitz, Esq
Dinsmore & Shohl LLP
Charleston, West Virginia
Counsel for the Petitioner,
Justin S. Golden, Sr.

John C. Palmer IV, Esq.
Keith J. George, Esq.
Robinson & McElwee PLLC
Charleston, West Virginia
P. Rodney Jackson, Esq.
Law Office of P. Rodney Jackson
Charleston, West Virginia
Counsel for the Respondent,
Mark A. Miller

Stuart A. McMillan, Esq.
Christopher L. Edwards, Esq.
Bowles Rice, LLP
Charleston, West Virginia
Counsel for Petitioner,
New York Life

JUSTICE KETCHUM delivered the Opinion of the Court.

JUSTICE LOUGHRY dissents and reserves the right to file a dissenting Opinion.

SYLLABUS BY THE COURT

1.     "A cause of action for alienation of affections consists of three elements: wrongful conduct of defendant, plaintiff's loss of affection or consortium with the other spouse, and causal connection between such conduct and loss. W.Va. Code, 56-3-2a, abolishes all such suits for alienation of affections." Syllabus Point 2, *Weaver v. Union Carbide Corp.*, 180 W.Va. 556, 378 S.E.2d 105 (1989).

2.     "Article VIII, Section 13 of the West Virginia Constitution and W.Va. Code, 2-1-1, were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law." Syllabus Point 2, *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979).

3.     The torts of criminal conversation and adultery are, in essence, common law actions for alienation of affections.  Accordingly, the torts of criminal conversation and adultery are not valid causes of action in West Virginia.

Justice Ketchum:

Petitioner Justin S. Golden, Sr. ("Defendant Golden") invokes this Court's original jurisdiction in prohibition to challenge the March 18, 2014, oral order issued by the Circuit Court of Kanawha County denying his motion for summary judgment. Respondent/plaintiff Mark A. Miller ("Mr. Miller") sued Defendant Golden for criminal conversation, adultery, and breach of fiduciary duty to a beneficiary. Mr. Miller also sued Defendant Golden's employer, New York Life Insurance and Annuity Corporation and New York Life Securities, LLC ("New York Life"),[1] for negligent training and supervision. Further, Mr. Miller alleged that New York Life was liable for Defendant Golden's "wrongful acts" under the doctrine of respondeat superior. These causes of action are based on Mr. Miller's allegation that his ex-wife, Maria Miller, engaged in an adulterous affair with Defendant Golden that "destroyed" his marriage and led to the Millers' divorce. Mr. Miller seeks approximately $561,502.00 in monetary damages from the defendants.

Defendant Golden filed a petition for a writ of prohibition after the circuit court denied his motion for summary judgment. Defendant Golden argues that Mr. Miller's causes of actions are, in essence, claims for alienation of affections. Because all

---

[1] New York Life filed a motion to join in Defendant Golden's writ of prohibition. This Court granted the motion.

1

claims for alienation of affections are prohibited by W.Va. Code § 56-3-2a [1969], Defendant Golden asserts that the circuit court erred by denying his summary judgment motion. Defendant Golden states that if this case proceeds to trial his "private and personal life will be paraded in front of the jury on claims [alienation of affections] that this Court has said may not be maintained. This public spectacle cannot be undone simply by waiting to remedy the Circuit Court's erroneous Order on appeal." Therefore, Defendant Golden asks this Court to grant the writ of prohibition.

After review, we find that all of Mr. Miller's causes of action are based on claims for alienation of affections. Under this Court's clear power to alter the common law, and because *all claims* for alienation of affections are prohibited by W.Va. Code § 56-3-2a, we abolish the torts of criminal conversation and adultery. We therefore grant the requested writ of prohibition.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mark Miller and Maria Miller were married in 1994. They have one child, a fifteen-year-old son. In January 2010, Maria Miller rolled over her 401(k) retirement account into an annuity account with New York Life. Defendant Golden was the New York Life employee who assisted Maria Miller with this transaction. Maria Miller was the sole owner of the 401(k) account. Mr. Miller was initially listed as the beneficiary on

2

the annuity. After the couple divorced, Maria Miller changed the designated beneficiary from Mr. Miller to their fifteen-year-old son.

Several months after Maria Miller purchased the annuity, she and Defendant Golden began having an affair.[2] Mr. Miller filed for divorce from Maria Miller on May 3, 2011. The parties reached a compromise on all issues related to the divorce and a final agreed order of divorce and a property settlement agreement were entered in the Family Court of Kanawha County on November 22, 2011. The order states that the divorce was caused by irreconcilable differences.

On June 5, 2012, Mr. Miller filed a complaint against Defendant Golden and New York Life alleging numerous causes of actions arising from Maria Miller's affair with Defendant Golden. The complaint alleged conversion, breach of fiduciary duty, intentional infliction of emotional distress,[3] and negligent training and supervision.[4] Mr. Miller subsequently filed an amended complaint adding counts for adultery and criminal conversation. Mr. Miller alleges that he sustained the following financial

---

[2] Defendant Golden states that the affair began in July 2010. Maria Miller states that the affair began in "April/May" 2010.

[3] Mr. Miller's complaint alleged that his wife's affair caused him to suffer from "Herpes Phobia." The complaint states that after learning of his wife's infidelity, Mr. Miller "developed a constant fear of contracting this loathsome disease [herpes], a condition commonly known as 'Herpes Phobia.'"

[4] After the original complaint was filed, both Defendant Golden and New York Life filed motions to dismiss that were denied by the circuit court.

damages due to Defendant Golden's alleged misconduct: (1) $11,527.44 in attorneys' fees; (2) $975.00 in accounting fees; and (3) $549,000.00 refinancing his residence and relinquishing his interest in "certain jointly owned real and personal property." Mr. Miller's complaint states that he seeks "both compensatory and punitive damages, including reasonable attorney fees and court costs" from the defendants.

Defendant Golden and New York Life filed motions for summary judgment that were denied by the circuit court on January 16, 2014. Defendant Golden and New York Life later renewed their motions for summary judgment. The circuit court held a pre-trial hearing on March 18, 2014, during which it orally denied these motions for summary judgment.

The next day, on March 19, 2014, Defendant Golden filed a petition for a writ of prohibition with this Court. Defendant Golden argues that all of Mr. Miller's causes of actions are, in essence, claims for alienation of affections. Because all claims for alienation of affections are prohibited under W.Va. Code § 56-3-2a, Defendant Golden asks this Court to issue a writ of prohibition barring enforcement of the circuit court's order denying his motion for summary judgment. On March 24, 2014, this Court issued a rule to show cause.

On the same day this Court issued its rule to show cause, Mr. Miller voluntarily dismissed his claims for conversion and intentional infliction of emotional distress. Therefore, the remaining causes of action now pending against Defendant Golden are criminal conversation, adultery and breach of fiduciary duty toward a

4

beneficiary. The remaining cause of action against New York Life is negligent training and supervision, and its liability for Defendant Golden's alleged misconduct under the doctrine of respondeat superior.

## II.

## STANDARD OF REVIEW

This Court has previously addressed our standard of review for a writ of prohibition. "The writ of prohibition will issue only in clear cases, where the inferior tribunal is proceeding without, or in excess of, jurisdiction." Syllabus, *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925). *See also* Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."); Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1.").

Further, in Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court is exceeding its authority:

5

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With the foregoing in mind, we turn to the parties' arguments.

## III.

## ANALYSIS

The issue presented in this case is whether the causes of action Mr. Miller alleges, including his claims for criminal conversation and adultery, are, in essence, claims for alienation of affections which are prohibited by W.Va. Code § 56-3-2a.[5] We

---

[5] In reviewing W.Va. Code § 56-3-2a, we recognize that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syllabus Point 2, *Crockett v.*

(continued . . .)

begin our discussion with a general background on the torts of criminal conversation and alienation of affections.

## A. Criminal Conversation

"Criminal conversation is, quite simply, adultery. The action protects the plaintiff's interest in exclusive sexual intercourse with his or her spouse[.]" Jill Jones, *Fanning An Old Flame: Alienation of Affections and Criminal Conversation Revisited*, 26 Pepp. L. Rev. 61, 67 (1999). Criminal conversation was historically based on the legal precept that "women had no legal status." Caroline L. Batchelor, *Falling Out of Love With An Outdated Tort: An Argument for the Abolition of Criminal Conversation in North Carolina*, 87 N. C. L. Rev. 1910, 1912-13 (2009).[6] Criminal conversation "entered

---

*Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

[6] Ms. Batchelor notes that criminal conversation has been compared to actions that were previously available to masters when servants were lured away:

> If the defendant injured a servant or enticed him away from service, the master would have a cause of action for the loss. Similar rules applied if the master's wife was injured or enticed away. Thus, the origins of criminal conversation stem from the common law of trespass in which wives, like servants, were considered the property of their husbands and masters.

(continued . . .)

English jurisprudence in the seventeenth century as one step in the procedure necessary to obtain a divorce." Shauna M. Deans, *The Forgotten Side of the Battlefield in America's War on Infidelity: A Call For the Revamping, Reviving, and Reworking of Criminal Conversation and Alienation of Affections*, 53 How. L.J. 377, 392 (2010). Criminal conversation was a civil cause of action for damages under the common law. *Id.* The adjective "criminal" was merely used to explain that a wrongful act had occurred that violated the marriage. *Id.* The noun "conversation" in seventeenth-century English parlance referred to sexual intercourse. *Id.*

Criminal conversation initially enjoyed near universal acceptance in the United States – every state, except Louisiana, recognized that a husband had the exclusive right to the cause of action. Batchelor, *Falling Out of Love With An Outdated Tort*, 87 N. C. L. Rev. at 1914. "While the torts [of criminal conversation and alienation of affections] were originally adopted in America in accordance with the early common law principle that only men could sue, passage of the Married Women's Property Acts in the late nineteenth century afforded women the right to sue." Jill Jones, *Fanning An Old Flame*, 26 Pepp. L. Rev. at 69.

After its initial acceptance in this country, criminal conversation has been abolished by "all but a few states":

---

*Id.*, 87 N. C. L. Rev. at 1914 (internal citation omitted).

8

Beginning in the 1930s, criticism of alienation of affections and criminal conversation torts reached a fevered pitch. In 1935, Indiana became the first state to enact a "heartbalm statute," abolishing the jurisdiction's heartbalm torts, including alienation of affections and criminal conversation. The Indiana law, entitled "An Act to Promote Public Morals," simply abolished "all civil causes of action for breach of promise to marry, for alienation of affections, for criminal conversation, and for the seduction of any female person of the age of twenty-one years or more." New York and Illinois followed Indiana's lead almost immediately by enacting similar statutes. By 1997, all but a few states had abolished the tort either statutorily or judicially.

*Id*. 26 Pepp. L. Rev. at 69-70 (internal citation omitted).

Initially, courts declined to abolish criminal conversation "identifying the issue as more appropriately addressed by their counterparts in state legislatures." Kyle Graham, *Why Torts Die*, 35 Fla. St. U. L. Rev. 359, 427 (2008). However, since 1976, courts in eleven states have abolished criminal conversation actions.[7] Whether by judicial decision or by statute,[8] "the clear nationwide trend has been to abolish the tort of criminal conversation." *Hanover v. Rush*, 809 S.W.2d 893, 897 n.6 (Tenn. 1991).

---

[7] *See Fadgen v. Lenkner*, 365 A.2d 147, 152 (Pa. 1976); *Bearbower v. Merry*, 266 N.W.2d 128, 135 (Iowa 1978); *Kline v. Ansell*, 414 A.2d 929, 933 (Md. 1980); *Lynn v. Shaw*, 620 P.2d 899, 902-03 (Okla. 1980); *Hunt v. Hunt*, 309 N.W.2d 818, 821 (S.D. 1981); *Irwin v. Coluccio*, 648 P.2d 458, 461 (Wash. Ct. App. 1982); *Feldman v. Feldman*, 480 A.2d 34, 36 (N.H. 1984); *Neal v. Neal*, 873 P.2d 871, 875 (Idaho 1994); *Norton v. MacFarlane*, 818 P.2d 8, 17 (Utah 1991); *Saunders v. Alford*, 607 So. 2d 1214, 1219 (Miss. 1992); and *Thomas v. Siddiqui*, 869 S.W.2d 740, 742 (Mo. 1994).

[8] Twenty-six states and the District of Columbia have abolished criminal conversation by statute: Ala.Code § 6-5-331 (1975); Ark.Stat.Ann. § 16-118-106 (Supp.1991); Cal.Civ.Code § 43.5 (1982); Colo.Rev.Stat. § 13-20-202 (1987);

(continued . . .)

Courts have offered numerous reasons why criminal conversation should be abolished, including the following list from the Supreme Court of Mississippi:

> (1) a woman is no longer the property of her husband; (2) the tort has no deterrent effect; (3) a cause of action may be brought for vindictive purposes; (4) the potential for abuse is great; (5) the tort is devoid of any defenses; and (6) determining damages is difficult.

*Saunders v. Alford*, 607 So.2d 1214, 1216 (Miss. 1992).

Similarly, the South Dakota Supreme Court abolished criminal conversation and held that it was an "outmoded archaic holdover," and "overriding considerations of reality must supersede the perpetuation of . . . criminal conversation actions." *Hunt v. Hunt*, 309 N.W.2d 818, 821-22 (S.D.1981).[9] The South Dakota Supreme Court also found that criminal conversation actions were fraught with the

---

Conn.Gen.Stat.Ann. § 52-572f (1991); Del.Code Ann. tit. 10, § 3924 (1974); D.C.Code § Ann. 16-923 (1989); Fla.Stat.Ann. § 771.01 (1984); Ga.Code Ann. § 51-1-17 (1982); Ind.Code Ann. § 34-12-2-1 (1998); Mass.Gen.L.Ann. ch. 207, § 47B (1987); Mich.Comp.Laws Ann. § 600.2901 (1986); Minn.Stat.Ann. § 553.02 (1988); Neb.Rev.Stat. § 25-21, 188 (1989); Nev.Rev.Stat.Ann. § 41.380 (1986); N.J.Stat.Ann. § 2A:23-1 (1987); N.Y.Civ.Rights Law § 80-a (1976); N.D.Cent.Code § 14-02-06 (1991); Ohio Rev.Code Ann. § 2305.29 (1991); Or.Rev.Stat. § 31.982 (2003); R.I.Gen.Laws § 9-1-42 (1985); S.C.Code Ann. § 15-3-150 (Supp.1991); Tenn.Code Ann. § 39-13-508 (1991); Vt.Stat.Ann. tit. 15, § 1001 (1989); Va.Code Ann. § 8.01-220 (1984); Wis.Stat.Ann. § 768.01 (1981); Wyo.Stat. § 1-23-101 (1977).

[9] *See also Irwin v. Coluccio*, 648 P.2d 458, 461 (1982) ("[C]riminal conversation as a viable legal remedy is an outmoded, archaic holdover from an era when a wife was considered the chattel of her spouse rather than a distinct legal entity. Neither wives nor husbands are property. The love and affection of a human being who is devoted to another human being is not susceptible to theft. There are simply too many intangibles which defy the concept that love is property.").

potential for abuse. It stated the "potential for abuse . . . is clear since the threat of exposure, publicity, and notoriety is more than sufficient to breed corruption, fraud and, misdealings on the part of unscrupulous persons in bringing unjustified and malicious suits." *Id.* at 822 (internal citation omitted).

The Iowa Supreme Court of Appeals abolished criminal conversation due, in part, to the lack of defenses to the cause of action. In *Bearbower v. Merry*, 266 N.W.2d 128, 135 (Iowa 1978), the court stated that it was "unreasonable to impose upon a defendant such harsh results without affording any real opportunity to interject logically valid defenses[.]"

Furthermore, the Iowa court found that "a fundamental flaw in the criminal conversation remedy . . . is its insensitive imposition without regard to the viability of the marriage relationship, or to the fact . . . that [the marital] relationship may not have been affected adversely. In short, recovery may be allowed where stability of the marriage survives unimpaired." *Id.* Likewise, the Supreme Court of Mississippi recognized that "criminal conversation requires no actual injury at all. It is born of the notion that the cuckold spouse is presumptively injured, or the notion that the spouse has some property interest in the chastity of the other. Such presumptions and notions have no vitality in today's society." *Saunders*, 607 So.2d at 1218-19.

One commentator summarized the argument in favor of the abolition of criminal conversation as follows:

> [C]riminal conversation does not deter extra-marital behavior
> because of widespread ignorance that criminal conversation

11

exists as well as ignorance of what constitutes culpable conduct. A single person who meets another person who appears to be single - he or she lives alone and does not mention a former spouse or a legal separation - unknowingly becomes liable for criminal conversation if he or she begins a sexual relationship with a person whose divorce is not final. Situations like this are not uncommon and to impose liability on those defendants is unjust.

Criminal conversation is an open invitation for angry, embittered plaintiffs who seek financial liability from a third party who is, in most cases, not the only reason for the plaintiff's failed marriage. This Comment does not advocate adultery, and plaintiffs who are hurt and humiliated by their spouse's infidelity are deserving of sympathy and compassion. But, to drag a third party through the ordeal of a criminal conversation trial in order to heal the wounds of a broken marriage is not an appropriate use of the . . . court system. Furthermore, the vindictive spirit of a criminal conversation action has been used for blackmail and leverage in settlement proceedings. This reason alone has been the catalyst for many states to abolish the action[.]

Batchelor, *Falling Out of Love With An Outdated Tort*, 87 N. C. L. Rev. at 1949-50. Having examined the tort of criminal conversation, we proceed to consider the tort of alienation of affections.

### B. Alienation of Affections

"The gist of the tort of alienation of affections is . . . an interference with the marital relation that changes one spouse's attitude toward the other." *Jacqueline R. v. Household of Faith Family Church, Inc.*, 97 Ca.App.4th 198, 118 Cal.Rptr.2d 264 (2002). "The basic nature of the alleged violation of the plaintiff's right in an alienation of affections cause of action is the injured spouse's loss of consortium with his or her

alienated spouse." Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts*, § 22:2 at 768 (2011).

In *Helsel v. Noellsch*, 107 S.W.3d 231, 232 (Mo. 2003) (internal citation omitted), the Supreme Court of Missouri set forth a brief history of alienation of affections:

> In order to ensure pure bloodlines and discourage adultery, the early Germanic tribes provided that men were entitled to payment from the wife's lover so that the husband could purchase a new spouse. As successors to the Germanic tradition, the Anglo-Saxons also provided a cause of action for men to recover for another's interference with the marital relationship. The basis for this cause of action was that wives were viewed as valuable servants to their husband. Later, early English common law established two causes of action, enticement and seduction, which are the precursors to the modern day torts of alienation of affection and criminal conversation. The purpose underlying both causes of action was to vindicate the husband's property rights in his wife.

Beginning with New York in 1864, almost every state in this country established a cause of action for alienation of affections in which men, but not women, could "vindicate their rights" in the marital relationship. *Id.* In the late nineteenth and early twentieth centuries, most states acted to equalize the legal status of wives by allowing them to sue in their own names. *Id.* Therefore, the original justification for alienation of affections, that husbands had a property right in their wives, was undermined. *Hoye v. Hoye*, 824 S.W.2d 422, 424 (Ky.1992). While some modern courts

13

came to justify suits for alienation of affections as a means of preserving marriage and the family,[10] the tort has been abolished in most states, either judicially[11] or by statute.[12]

A number of reasons for abolishing alienation of affections have been offered. In *Wyman v. Wallace*, 615 P.2d 452, 455 (Wash. 1980), the Washington Supreme Court stated that a viable marriage is not one in which an outsider can alter the mental attitude of one spouse toward the other. The Washington court cited the following reasons for abolishing the tort: (1) the action does not preserve marital harmony; (2) courts cannot properly police settlements, which are often characterized by the plaintiff-spouse blackmailing the defendant into a high priced settlement with the threat of a

---

[10] *See Norton v. Macfarlane*, 818 P.2d 8, 12 (Utah 1991).

[11] Courts abolishing alienation of affections include *Russo v. Sutton*, 422 S.E.2d 750 (S.C. 1992); *Hoye v. Hoye*, *supra*; *O'Neil v. Schuckardt*, 733 P.2d 693 (Idaho 1986); *Fundermann v. Mickelso*n, 304 N.W.2d 790 (Iowa 1981); *Hunt v. Hunt*, *supra*; and *Wyman v. Wallace*, *supra*.

[12]Statutes abolishing alienation of affections include: Ala.Code § 6-5-331 (1975); Ariz.Rev.Stat.Ann. § 25-341 (1991); Ark.Stat.Ann. § 16-118-106 (Supp.1991); Cal.Civ.Code § 43.5 (1982); Colo.Rev.Stat. § 13-20-202 (1987); Conn.Gen.Stat.Ann. § 52-572b (1991); Del.Code Ann. tit. 10, § 3924 (1974); D.C.Code Ann. § 16-923 (1989); Fla.Stat.Ann. § 771.01 (1984); Ga.Code Ann. § 51-1-17 (1982); Ind.Code Ann. § 34-12-2-1 (1998); Mass.Gen.L.Ann. ch. 207, § 47B (1987); Mich.Comp.Laws Ann. § 600.2901 (1986); Minn.Stat.Ann. § 553.02 (1988); Mont.Code Ann. § 27-1-601 (1991); Neb.Rev.Stat. § 25-21,188 (1989); Nev.Rev.Stat.Ann. § 41.380 (1986); N.J.Stat.Ann. § 2A:23-1 (1987); N.Y.Civ.Rights Law § 80-a (1976); N.D.Cent.Code § 14-02-06 (1991); Ohio Rev.Code Ann. § 2305.29 (1991); Okla.Stat.Ann. tit. 76, § 8.1 (1987); Or.Rev.Stat. § 30.840 (1983); Pa.Cons.Stat. § 1901 (1991); R.I.Gen.Laws § 9-1-42 (1985); Tenn.Code Ann. § 36-3-701 (1991); Vt.Stat.Ann. tit. 15, § 1001 (1989); Va.Code Ann. § 8.01-220 (1984); Wis.Stat.Ann. § 768.01 (1981); Wyo.Stat. § 1-23-101 (1977).

lawsuit that could destroy the defendant's reputation; (3) the difficulty in assessing damages; and (4) the fact that the plaintiff is essentially selling his spouse's affections. *Id*. Similarly, the Idaho Supreme Court abolished alienation of affections in *O'Neil v. Schuckardt*, 733 P.2d 693, 697 (Idaho 1986), noting that "the action hurts the reputation of both spouses; the action diminishes the plaintiff's dignity and injures his own reputation through the process of seeking money damages; and the action can have a harmful effect on the children of the marriage."

### C. Criminal Conversation and Alienation of Affections in West Virginia

In Syllabus Point 2 of *Weaver v. Union Carbide Corp.,* 180 W.Va. 556, 378 S.E.2d 105 (1989), this Court set forth the elements of an alienation of affections claim and recognized that the cause of action has been statutorily abolished in West Virginia:

> A cause of action for alienation of affections consists of three elements: wrongful conduct of defendant, plaintiff's loss of affection or consortium with the other spouse, and causal connection between such conduct and loss. W.Va. Code, 56-3-2a, abolishes *all such suits* for alienation of affections.

(Emphasis added).

While a number of West Virginia cases discuss alienation of affections, only one West Virginia case contains a syllabus point addressing criminal conversation. That case, *Ohlinger v. Roush*, 119 W.Va. 272, 193 S.E. 328 (1937), involved "an action of trespass . . . in which the plaintiff charges the defendant with alienating the affections

15

of, and carnal knowledge of, his wife, resulting in her giving birth to a child." Syllabus

Point 2 of *Ohlinger* states:

> In a criminal conversation case, where, in the declaration, the defendant is charged with having had carnal relations with the wife of the plaintiff, resulting in the birth of a child, the admission of testimony of the wife that the defendant was the father of her child was prejudicial error for which the verdict of the jury will be set aside.

Eighteen years after *Ohlinger* was decided, this Court had another occasion to address criminal conversation. In *Kuhn v. Cooper*, 141 W.Va. 33, 42, 87 S.E.2d 531, 536 (1955), the Court noted that there was a slight distinction between alienation of affections and criminal conversation: "Alienation of affections is distinguished from an action for criminal conversation. In an alienation of affections action, if only enticement or artifice is shown, malice must be proved to warrant a recovery. But, if adultery is proved, such proof dispenses with the necessity for proving malice." After noting this slight distinction, the Court in *Kuhn* explained that the damage suffered as a result of criminal conversation is the alienation of a spouse's affection. *Id*. Since *Kuhn* was decided in 1955, this Court has not addressed a single case in which a plaintiff has asserted a criminal conversation claim.

Fourteen years after *Kuhn* was decided*,* the Legislature abolished *all suits* for alienation of affections in W.Va. Code § 56-3-2a [1969]. It states: "Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained in this State for breach of promise to marry or for alienation of affections, unless such civil action was instituted prior to the effective date of this section."

16

This Court provided a detailed analysis of W.Va. Code § 56-3-2a and of all suits involving claims for alienation of affections in *Weaver, supra*. In *Weaver*, a wife sued her husband's marriage counselor and the company that employed the marriage counselor after her husband had an affair with the marriage counselor that led to the couple's divorce. The wife alleged (1) professional malpractice and (2) intentional interference with the marital relationship. She sought $2.5 million in damages for the dissolution of the marriage, annoyance and inconvenience, and mental distress. As in the present case, the wife did not use the term "alienation of affections" in her claims against the marriage counselor and his employer. Though the wife did not label her claims "alienation of affections," the Court concluded that her claim for "intentional interference with the marital relationship is, *in essence*, one for alienation of affections and is barred by W.Va. Code, 56-3-2a." 180 W.Va. at 560, 378 S.E.2d at 109 (emphasis added). After noting that "marital harmony is best served by judicial noninvolvement," the Court in *Weaver* explained that any cause of action that was substantively one for alienation of affections should be dismissed:

> *We must look to the substance of the plaintiff's complaint and not merely to its form.* It is clear that the plaintiff seeks only damages that relate to the impairment of her marriage and to her eventual divorce. She did not have a professional relationship with the counselor on which to predicate a malpractice claim. To allow her suit would also run counter to the policies underlying the legislative abolition of suits for alienation of affections.

180 W.Va. at 559-60, 378 S.E.2d at 108-09 (emphasis added).

17

## D. Present Writ

The issue presented in this writ is whether the causes of action Mr. Miller alleges, including his claims for criminal conversation and adultery, are, in essence, claims for alienation of affections that have been abolished by W.Va. Code § 56-3-2a. As we noted earlier, criminal conversation is, quite simply, adultery; they are one and the same.

Mr. Miller argues that criminal conversation "has long been recognized under West Virginia law" and is "clearly distinguishable" from alienation of affections. Mr. Miller asserts that the Legislature only abolished a cause of action for alienation of affections in W.Va. Code § 56-3-2a, and that it did not abolish criminal conversation. Further, Mr. Miller argues that this Court's holding in *Weaver* does not apply to the present case because "criminal conversation and alienation of affections are not substantially similar, as this Court deemed intentional interference with the marital relationship and alienation of affections to be." Mr. Miller states that this Court's ruling in *Weaver* does not support the defendants' argument that W.Va. Code § 56-3-2a abolished "*all claims* for alienation of affections."

By contrast, the defendants argue that this Court's holding in *Weaver* was clear and unequivocal: "W.Va. Code § 56-3-2a, abolished *all suits* for alienation of affections." 180 W.Va. at 559, 378 S.E.2d at 108 (emphasis added). The defendants state that the present case, like *Weaver*, is an alienation of affections suit where a professional relationship between the participants in an extra-marital affair led the cuckold spouse to

18

assert a number of legal theories that are all claims, in essence, alleging alienation of affections. Further, the defendants argue that the torts of criminal conversation and alienation of affections are "substantially similar" and that W.Va. Code § 56-3-2a's ban on suits for alienation of affections and *Weaver's* holding that "*all suits* for alienation of affections" are abolished, includes claims for criminal conversation.

We agree with the defendants that Mr. Miller does not have a valid cause of action for criminal conversation.

In *Weaver*, a wife sued a third-party and the third-party's employer after the third-party had an extra-marital affair with her husband which led to the couple's divorce. In the present case, Mr. Miller sued a third-party (Defendant Golden) and the third-party's employer (New York Life) after the third-party had an extra-marital affair with Mr. Miller's wife which allegedly led to the Millers' divorce. The Court in *Weaver* found that although the wife labelled her claims "intentional interference with the marital relationship" and "professional malpractice," these claims were substantively alleging alienation of affections. Mr. Miller argues that the present case is distinguishable from *Weaver* because "criminal conversation and alienation of affections are not substantially similar, as this Court deemed intentional interference with the marital relationship and alienation of affections to be." We disagree.

Criminal conversation and alienation of affections both concern a third-party's interference with a relational interest. Courts in other jurisdictions analyzing the two torts have found that there is little, if any, reason to distinguish criminal conversation

19

from alienation of affections. For instance, in *Irwin v. Coluccio*, 648 P.2d 458, 461 (Wash. 1982), the Washington Court of Appeals held that the "considerations [underlying the abolishment of alienation of affections] are also applicable to the tort of criminal conversation. . . . [W]e see no useful purpose in permitting actions for criminal conversation to exist." In support of this holding, the court in *Irwin* cited William Prosser:

> As pointed out in W. Prosser, Torts, s 124 at 876-77 (4[th] ed. 1971):
>
> Criminal conversation . . . and alienation of affections still are often treated as separate torts, but there is no good reason for distinguishing them. They (both) represent . . . forms of interference with aspects of the same relational interest, and . . . may be present in the same case.

648 P.2d at 460.

Similarly, the Supreme Court of Missouri determined in *Helsel*, *supra*, that there was no rational basis for distinguishing criminal conversation from alienation of affections:

> The only difference between alienation of affection and criminal conversation is that criminal conversation requires proof of an adulterous sexual relationship. However, this difference in the elements of the torts does not provide a good basis distinguishing alienation of affection from criminal conversation because both torts simply represent different ways of interfering with the same relational interests. . . . Moreover, in reality, criminal conversation and alienation of affection are typically alleged concurrently as the conduct at issue almost always involves adultery.

107 S.W.3d at 233 (internal citation omitted).

Further, the reasons cited by this Court in *Weaver* for abolishing alienation of affections claims - (1) the potential for blackmail and extortion between spouses; (2) the difficulty in assessing the loss arising from the claim; (3) it represents a forced sale of one spouse's affections; and (4) marital harmony best being served by judicial noninvolvement – are substantially similar to the reasons other courts have cited for abolishing criminal conversation. *See Saunders v. Alford*, 607 So.2d at 1216 (abolishing criminal conversation because a woman is no longer the property of her husband; the tort has no deterrent effect; a cause of action may be brought for vindictive purposes; the potential for abuse is great; the tort is devoid of any defenses; and determining damages is difficult.). *See also Hunt v. Hunt,* 309 N.W.2d at 822 (abolishing criminal conversation and finding that the "potential for abuse . . . is clear since the threat of exposure, publicity, and notoriety is more than sufficient to breed corruption, fraud and, misdealings on the part of unscrupulous persons in bringing unjustified and malicious suits."); and *Neal v. Neal*, 873 P.2d 871, 875 (Idaho 1994) (citing the following reasons for abolishing criminal conversation: "Revenge, which may be a motive for bringing the cause of action, has no place in determining the legal rights between two parties. Further, this type of suit may expose the defendant to the extortionate schemes of the plaintiff, since it could ruin the defendant's reputation. Deterrence is not achieved; the nature of the activities underlying criminal conversation, that is sexual activity, are not such that the risk of damages would likely be a deterrent. Finally, since the injuries suffered are

21

intangible, damage awards are not governed by any true standards, making it more likely that they could result from passion or prejudice.").

In support of his argument that criminal conversation and alienation of affections are not substantially similar and should be treated differently, Mr. Miller relies on this Court's statement in *Kuhn*, *supra*, that there is a slight distinction between the two torts. The Court in *Kuhn* noted that criminal conversation requires adultery to be shown. 141 W.Va. at 42, 87 S.E.2d at 536. However, the Court also stated that "in an action for criminal conversation a physical debauchment of plaintiff's spouse is a necessary element *and the alienation of affections thereby resulting* is merely a matter of aggravation." *Id.* (emphasis added). Thus, the two torts are inexorably linked: a plaintiff attempting to prove criminal conversation is doing so to demonstrate the alienation of his/her spouse's affections that resulted from the adulterous act.

Finally, we note that since W.Va. Code 56-3-2a abolished *all* civil actions for alienation of affections in 1969, there has not been a single reported case from this Court in which a plaintiff asserted a criminal conversation claim. This lack of criminal conversation cases supports the defendants' argument that W.Va. Code 56-3-2a's ban on *all* civil actions for alienation of affections included the substantially similar tort of criminal conversation. Further, the lack of any modern West Virginia cases on criminal conversation supports the observation that the tort is an "outmoded archaic holdover" and that "overriding considerations of reality must supersede the perpetuation of . . . criminal conversation actions." *Hunt v. Hunt*, 309 N.W.2d at 821-22. When confronted with an

22

analogous situation – a plaintiff attempting to bring a criminal conversation cause of action after alienation of affections had been abolished – the Idaho Supreme Court stated:

> In *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986), in which we abolished the cause of action for alienation of affections, we discussed the archaic premise of a cause of action based on the notion of women as chattels and traced the change of attitude which led this Court and others to abolish causes of action based thereon. *Thus, although we have only now been presented with a case involving criminal conversation, we are satisfied that the premise for such a cause of action has been recognized as invalid for several years.*

*Neal v. Neal*, 873 P.2d at 874 (emphasis added). Similarly, we are satisfied that although this is the first opportunity this Court has had to address criminal conversation since W.Va. Code 56-3-2a abolished all suits for alienation of affections, and since *Weaver* instructed that *all suits* for alienation of affections have been abolished, we are satisfied that criminal conversation has lapsed into desuetude since W.Va. Code 56-3-2a was enacted. To find otherwise would be to ignore this Court's statement in *Weaver* that "marital harmony is best served by judicial noninvolvement." 180 W.Va. at 559, 378 S.E.2d at 105.

One other point guides our decision. The cause of action for criminal conversation is a common law tort. However, "[t]he common law is not a brooding omnipresence in the sky, but the articulate voice of some sovereign or quasi sovereign that can be identified[.]" *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 222, 37 S.Ct. 524, 531 (1917) (Holmes, J., dissenting). "When the common law of the past is no longer in harmony with the institutions or societal conditions of the present, this Court is

23

constitutionally empowered to adjust the common law to current needs." *Carbasho v. Musulin*, 217 W.Va. 359, 363, 618 S.E.2d 368, 372 (2005) (Starcher, J., dissenting). As we said in Syllabus Point 2 of *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979): "Article VIII, Section 13 of the West Virginia Constitution and W.Va. Code, 2-1-1, were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law." *See also* James Audley McLaughlin, *The Idea of the Common Law in West Virginia Jurisprudential History: Morningstar v. Black & Decker Revisited*, 103 W.Va. L. Rev. 125 (2000).

Based on the foregoing, it is clear that a common law cause of action for criminal conversation is, in its essence, a claim for alienation of affections. Because W.Va. Code 56-3-2a abolished all civil actions for alienation of affections and because this Court held that "*all suits* for alienation of affections" are abolished in Syllabus Point 2 of *Weaver*, criminal conversation is not a valid cause of action in West Virginia. Therefore, we find that the circuit court should have granted summary judgment in favor of the defendants on Mr. Miller's criminal conversation claim.

Turning to Mr. Miller's remaining causes of actions, we find that he does not have a viable claim for adultery under W.Va. § 61-8-3, nor does he have a viable claim for breach of a fiduciary duty against the defendants.

Mr. Miller's 2012 complaint alleges that Defendant Golden's "sexual relationship with [Maria] Miller constituted adultery within the meaning of W.Va. Code §

24

61-8-3." However, this statute was repealed by the Legislature in June 2010. Prior to its repeal, W.Va. Code § 61-8-3 stated: "If any person commit adultery or fornication, he shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than twenty dollars." Mr. Miller alleges that because Maria Miller's sexual relationship with Defendant Golden occurred prior to June 2010, this claim is not barred by the statute's subsequent repeal.[13]

We find that Mr. Miller may not maintain a cause of action for adultery under W.Va. Code § 61-8-3. First, the statute has been repealed. Further, W.Va. Code § 56-3-2a states "*[n]otwithstanding any other provision of law to the contrary*, no civil action shall lie or be maintained in this State . . . for alienation of affections." (Emphasis added). As this Court stated in *Weaver*, "[w]e must look to the substance of the plaintiff's complaint and not merely to its form. It is clear that the plaintiff seeks only damages that relate to the impairment of her marriage and to her eventual divorce." 180 W.Va. at 559-60, 378 S.E.2d at 108-09. The substance of Mr. Miller's complaint is for alienation of affections and the damages he seeks relate to the impairment of his marriage and his eventual divorce. We therefore conclude that he may not maintain a cause of action for adultery under the former W.Va. Code § 61-8-3 and find that the circuit court

---

[13] Mr. Miller argues that he may recover damages pursuant to W.Va. Code § 55-7-9 [1923], which states "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

erred by not granting summary judgment in favor of the defendants on this issue. Based on the foregoing discussion of criminal conversation and adultery, we hold that the torts of criminal conversation and adultery are, in essence, common law actions for alienation of affections. Accordingly, the torts of criminal conversation and adultery are not valid causes of action in West Virginia.

Mr. Miller also alleges that Defendant Golden "breached his fiduciary duty to [Mr. Miller] when he decided to use a sexual relationship as a persuasive tool to obtain Miller's 401K in an extreme and outrageous display of unprofessional, unbecoming and unscrupulous conduct." Mr. Miller does not assert that he had a professional relationship with Defendant Golden. Instead, he only asserts that because he was the designated beneficiary on his wife's annuity when the extra-marital affair occurred, that Defendant Golden breached "his fiduciary duty" to Mr. Miller.

In *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 436, 504 S.E.2d 893, 899 (1998), this Court stated "[a]s a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship." (Internal citation omitted). The Court in *Elmore* also noted that "[t]he fiduciary duty is '[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law[.]' Black's Law Dictionary 625 (6th ed.1990)." *Id.*

26

The defendants argue that Mr. Miller and Defendant Golden did not have any professional (or personal) relationship and that under *Elmore*, Mr. Miller cannot maintain a cause of action for breach of a fiduciary relationship without first establishing the existence of a relationship. Further, New York Life alleges that Mr. Miller has failed to establish that any alleged fiduciary duty was breached. New York Life asserts that Mr. Miller has not raised any problems with the services or investment products provided to Maria Miller by New York Life.

We find that Mr. Miller's breach of fiduciary duty claim is based on the common law tort of alienation of affections which he alleged Defendant Golden committed. Mr. Miller has failed to show any facts demonstrating that he had a fiduciary relationship with Defendant Golden. Instead, the only allegation is that Defendant Golden's affair with Maria Miller led to the Millers' divorce. The Court in *Weaver* examined an analogous situation when a wife alleged professional malpractice against a third-party and the third-party's employer after the third-party had an extra-marital affair with her husband which led to the couple's divorce. The wife in *Weaver* did not have any personal or professional relationship with the marriage counselor. The Court determined that her claim for professional malpractice could not be maintained because it was, in its essence, a claim for alienation of affections. The Court stated the "plaintiff [wife] lacks any professional relationship with the counselor and essentially sues for the alienation of [the] spouse's affections." 180 W.Va. at 559, 378 S.E.2d at 108. The same rationale applies to the present case. Mr. Miller lacks any professional relationship with Defendant

27

Golden and his breach of a fiduciary duty claim is essentially one for the alienation of Maria Miller's affections. Therefore, the circuit court should have granted summary judgment in favor of Defendant Golden on this issue.

All of Mr. Miller's claims against New York Life are derivative of the alleged wrongful conduct committed by Defendant Golden. Having determined that Defendant Golden did not commit an actionable tort, Mr. Miller does not have a valid cause of action against Defendant Golden and his claims against Defendant Golden's employer, New York Life, must also fail.

Because Mr. Miller has not asserted a viable cause of action against the defendants, we find that the circuit court committed error in denying Defendant Golden and New York Life's motions for summary judgment. We find that the defendants have no other adequate means to obtain the requested and desired relief, and that Defendant Golden will be damaged or prejudiced in a way that is not correctable on appeal if he is required to defend the merits of this lawsuit. The granting of relief to the defendants is therefore warranted.

## IV.

## CONCLUSION

Accordingly, for the reasons stated above, we find that Defendant Golden and New York Life are entitled to a writ of prohibition to prohibit the enforcement of the circuit court's March 18, 2014, order denying the defendants' motions for summary

judgment. We therefore vacate the March 18, 2014, ruling of the Circuit Court of Kanawha County and order the circuit court to grant Defendant Golden and New York Life's motions for summary judgment.

Writ Granted.